Argued and submitted September 27, 2013, reversed and remanded July 16, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSEPH DOMINIC FERRARO,
aka Joseph Domonic Ferraro,
*Defendant-Appellant.*

Lane County Circuit Court
201027964; A149092

331 P3d 1086

Anne Fujita Munsey, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services. Joseph Dominic Ferraro filed the supplemental brief *pro se.*

David B. Thompson, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Defendant, who was convicted of second-degree sexual abuse, ORS 163.425, and third-degree sodomy, ORS 163.385, argues that the court abused its discretion in denying his motion to postpone trial and erred in excluding evidence concerning conduct by his girlfriend, the victim's mother, as not relevant under OEC 401. He also asserts that nonunanimous jury verdicts are unconstitutional, an argument that has been rejected by this court in numerous cases and that we reject here without discussion. *See, e.g., State v. Curnutte,* 250 Or App 379, 381, 280 P3d 398, *rev den,* 352 Or 564 (2012). We conclude that the court abused its discretion in denying defendant's motion for postponement of trial to permit defense counsel to finish an investigation and to adequately prepare a defense for trial. Accordingly, we do not reach the evidentiary issue and reverse and remand.[1]

The relevant facts are procedural. Defendant was charged in multiple counts with sexually abusing and sodomizing P, the daughter of defendant's girlfriend, York; P was 14 and 15 years old during the alleged incidents. Defendant, P, and York lived together in Eugene at the time. In December 2010, P told a friend that defendant was abusing her, and, ultimately, the police were called. A detective interviewed defendant at the apartment he shared with P and York, and defendant confessed to multiple acts of sexual contact with P. Defendant was arrested and indicted on a total of 21 felony counts, including 17 counts of second-degree sexual abuse, ORS 163.425, and four counts of third-degree sodomy, ORS 163.385.

The court denied defendant's request for court-appointed counsel because it appeared that defendant had financial means to obtain private counsel. In late January

---

[1] In a supplemental brief filed *pro se*, defendant also contends that the state improperly failed to retain and to provide him with a police recording of an interview of P and York (the victim and her mother) and that the presiding judge, who denied his motions to postpone, was biased against him. The trial court ruled against defendant on the first issue, after finding that the recording did not contain any exculpatory statements and that the state did not act in bad faith by failing to retain the recording. We conclude that the record supports the trial court's findings. We also reject without discussion defendant's contention that the presiding judge was biased.

2011, at a 35-day call hearing, defendant appeared *pro se* and indicated to the court that he was trying to hire Wood, a private attorney, to represent him. He told the court that he was having trouble retaining Wood because his bank had secured his account due to someone trying to access it. The court agreed to set over the 35-day call to February 24 so that defendant could retain Wood; defendant waived his right under ORS 136.290 to have the case brought to trial within 60 days.

At the 35-day call hearing on February 24, defendant still had no attorney of record. The court asked defendant why he had not retained Wood to represent him. Defendant told the court that approximately a week before, he had learned that someone had drained the money from his bank accounts and sold his assets using a forged power of attorney. Accordingly, he no longer had the money to hire a private attorney and requested that the court appoint him counsel. The court appointed defendant a public defender from Public Defender Services (PDS) and set 35-day call for March 7.

Defendant first saw his public defender, Tufts, on March 5 for approximately 15 minutes, but did not see Tufts again after that. On March 7, at the next call hearing, Tufts appeared and explained that he had just been appointed and did not yet have discovery. The court set the case over to March 23. At the March 23 hearing, the case was set over to April 6 for a 35-day call. On April 6, defendant was not transported, so the case was set over to April 11.

Apparently dissatisfied with Tufts's performance, defendant requested that another public defender be assigned his case; PDS assigned another lawyer, Kaiser, to defendant's case. On April 11, the case was set over again to April 18. Thereafter, PDS discovered that it had a conflict because it had previously represented York; Kaiser reported that fact to the court on April 18. The court expressed displeasure that it had taken PDS that long to discover the conflict and that it was concerned about defendant's speedy trial rights. The court ordered that Deal, a public defender with the Defense Consortium, be appointed to represent defendant. The court set a trial date for June 14, 2011.

Meanwhile, defendant had been trying to raise money to hire a private attorney. Defendant had met with a private attorney, Jagger, on April 14 and thereafter tried to get money to retain his services. On April 20, just two days after Deal was appointed to represent defendant, Jagger sent Deal a letter and a substitution of attorney notice stating that defendant had retained Jagger to represent him in the case. On April 22, Jagger filed a notice of representation with the court, which made Jagger the attorney of record on the case. The next week, however, Jagger's office informed Deal that Jagger had not actually been retained by defendant and that the notice of representation had been filed by mistake. On May 9, at a 35-day call hearing, the court addressed the issue of who was representing defendant. Deal appeared and informed the court that Jagger had indicated that he was going to file a motion to withdraw as defendant's attorney. The court said that it could not do anything until Jagger had filed his motion to withdraw; accordingly, the court set the case over until May 11. The presiding judge warned Deal that the trial would occur in June: "I am not going to be postponing that trial date. I'd suggest you get to work." Thereafter, Jagger filed his motion to withdraw, which the court granted on May 11. On May 26, the court officially re-appointed Deal to the case, retroactive to May 11.

On June 1, defendant filed a motion to postpone the trial, with a supporting affidavit by Deal. In his affidavit, Deal explained the rocky history of defendant's legal representation in the case and stated that defendant had been "effectively without an attorney from December 17 to April 18, through little to no fault of his own," due to a number of problems both with obtaining funds for a private attorney, as well as issues with his court-appointed attorneys. As for his representation of defendant, Deal stated that, after he was appointed on April 18, he had "lost substantial preparation time because of Mr. Jagger's tentative hiring."

Deal also explained that defendant was subject to charges that "could bring him many years in prison if he is convicted" and that the allegations covered numerous events that occurred during a period from July 1, 2009 to December 17, 2010. He further stated that,

"[w]hile investigation has begun, there is much more to be done in order to prepare sufficiently for trial. There are many potential witnesses to be contacted regarding the alleged events and the credibility of the alleged victim, her mother, and other State witnesses. There is no way to complete the investigation by the trial date of June 14.

"There may also be a need to hire expert witnesses regarding the case. For example, the State is seeking to introduce text messages between Defendant and the alleged victim. However, according to Defendant there exist a message or messages which the State is not including, and which will put a different light on the text messages the State is seeking to introduce. If the State does not have those messages, we may need to hire an expert to retrieve them.

"Because of events that have occurred since Defendant's arrest December 17, and the nature of the case, there is not enough time to prepare a fair trial for Defendant by June 14, and the trial should be postponed."

At the hearing on the motion, Deal also noted that there was some evidence that York was involved in the disappearance of defendant's money, and he indicated that he wanted to pursue "a lot of collateral evidence that affects the credibility of the witnesses, not only of the mother and perhaps the daughter, but also these other witnesses that we were talking about in the case." The state opposed the motion, arguing that it was a "double confession" case with "overwhelming" evidence of guilt; that both efficiency considerations, given that subpoenas had been issued, and concern for P militated against postponement; the court previously had told defendant that the trial date was firm; and York's involvement in defendant's financial troubles had been known for months. Deal countered that there were months during which, practically speaking, defendant had no lawyer to prepare his case. Deal also argued that the confession made the case more complicated to prepare and to defend and that the "strength of the case should not be a consideration" as to whether defendant was entitled to a fair trial. The court denied the continuance without elaboration.

On June 9, defendant filed a second motion to postpone, relying on Deal's earlier affidavit. At the hearing on that motion, Deal explained that,

"as it has turned out, there is substantial investigation that still needs to be done. There is investigation that needs to be completed to see justice served and [the prosecutor] agrees that this is a case that should be postponed."

After the court reviewed the affidavit with Deal, Deal added further information:

"THE COURT:   So, as I understand what you're telling me now it's that you want to investigate issues that really surround the credibility of the alleged victim's mother, is that fair to say?

"[DEFENSE COUNSEL]:   That plus the alleged victim, herself, plus at least two other witnesses and then there are other potential witnesses who may have their credibility questioned and there are a number of witnesses who can talk about the credibility of these people. It's just a lot of investigation that needs to be done."

The state confirmed that it no longer opposed the postponement, although it did not concede the evidentiary value of the evidence that defendant sought. The following colloquy followed:

"[THE STATE]:   And not to get into the details too much, but I understand the theory that Mr. Deal and Defense is pursuing regarding the credibility of these witnesses and what they hope the evidence would turn up, and I would agree that additional time that he would need.

"I don't think it is a false representation that they need additional time to investigate these other credibility-related pieces of evidence, but again it's not that I think that those are going to bear out for him.

"It's kind of two different issues as far as, of course, he's entitled to present his best case that he can, which would include impeachment of witnesses regardless of how futile that might be.

"THE COURT:   How long do you think a Court should allow someone to investigate potential impeachment materials that you think are futile?

"[THE STATE]:   Your Honor, I think a month would be generous, particularly since these are apparently the Defendant's accounts. I don't know that they have materials

from these accounts yet or not, but it doesn't seem like it would be that difficult to get his own account information.

"THE COURT: It doesn't seem like there is any reason why Mr. Deal shouldn't have those now.

"[DEFENSE COUNSEL]: Well, we have been subpoenaing these, but we don't have them and those aren't the only credibility issues that I'm talking about.

"[THE STATE]: I will acknowledge that's true, it's not the only issue and the other issue is not something that can be turned around in the next couple of days or a week.

"THE COURT: It does seem to me that the other issue which we discussed in chambers could necessarily be turned around this year, and I'm also not granting that it's relevant or germane in any way to this case, which is, I'm not going to hear it, so I can say this, which is a confession case.

"I don't know how much good it does for you to impeach the mother of the complaining witness in the case where you've confessed.

"[DEFENSE COUNSEL]: And the complaining witness.

"THE COURT: And the complaining witness who's a minor.

"[DEFENSE COUNSEL]: But, nevertheless, I submit that [defendant] should have the opportunity to do that effectively and as far as the time goes, in light of everything that has been discussed, I was thinking two months would be a good minimum."

Despite the state's change of position, the presiding judge denied the motion.

Finally, the morning of trial, defendant again sought a postponement, arguing that he had not had sufficient time to investigate and to prepare for trial:

"[DEFENSE COUNSEL]: Well, what I spoke about to [the court] during those appearances has come true. There's been insufficient time to investigate, which means there are a lot of witnesses that are potentially helpful, which we have not been able to contact in this limited period of time.

"We have subpoenaed bank records, which have not been produced. Some of the potential witnesses in our favor would be employees of Rhea's Spa[,] which we have not been able to contact.

"Also, * * * the alleged victim's grandmother. We have not been able to follow up with her. She has a lot of knowledge about the background of these people.

"* * * [P's] natural father knows a lot about the background. We have not been able to contact him, and there are other witnesses who know about background information and about the relationship between these parties.

"Also, we just received a jail recording of a conversation that [defendant] had with a friend of his in which he makes some statements which could be termed incriminating.

"[Defendant] informs me there are a number of other recordings or phone calls he made in which he made statements that are the opposite to the same person. So, there is just a lot of investigation that needs to be done and we haven't had time to do it, even a week or two weeks would help greatly.

"[Defendant] is, you can swear him in and he'll swear that everything I just said is true."

After the state objected and argued that Deal had not made clear that any of the new witnesses would be useful to defendant, Deal explained that the motivation and credibility of the accusers was going to be a key issue at trial. He began by noting that P's story had changed significantly between her first disclosure to her friend and P's conversation with a counselor and her subsequent interview with the police:

"[DEFENSE COUNSEL]: I'll explain a little more about the logical connection, Your Honor. On December 17th of last year, the victim first disclosed an incident to a high school friend, who then talked to a Counselor.

"When talked to by that Counselor, she said there was one incident the day before and that there had never been any other incidents. So, three days later, she and her mother come in to [be] interviewed further by the police.

"The story has completely changed. There's a whole bunch of incidents related pretty much opposite of what the

first statement was, and she says there was a lot of contact before that.

"So, our contention is and we have evidence to show that something happened in those 2 or 3 days, and there's evidence of a plan to keep [defendant] in jail, to take his assets."

Defense counsel argued that "one of the big issues" in the case was the credibility of P and York, and that some of the witnesses he wanted to pursue would speak to that issue. The state told the court that it would "be objecting to prior bad acts," indicating the prior conduct of P and York. The acting presiding judge denied the motion, noting that it had "heard some of this off the record" during a settlement conference and "was unconvinced about the relevance and hence the admissibility of some of what we talked about."

The trial commenced in the afternoon before a different judge. Defendant continued to contend that York had taken his money, and his theory of the case was that she and P had conspired to fabricate the allegations against him for financial gain. There was no physical evidence of abuse. Defendant provided an explanation for the incriminating statements he had made to the police, and he sought to testify that York had told him that, when she and P lived in Utah, York had forged a power of attorney for an elderly man with whom she was living, after which she and P attempted to poison the man with antifreeze. The trial court ruled that the evidence was not relevant under OEC 401.

Defendant was convicted of multiple counts of second-degree sexual abuse and third-degree sodomy. He was sentenced to 122 months in prison and two years of post-prison supervision. He now appeals, challenging the denial of his motion to postpone trial and the exclusion of his evidence. For the reasons that follow, we agree that the court abused its discretion in denying the motion to postpone.

A motion for continuance is addressed to the sound discretion of the trial court. *State v. Wolfer*, 241 Or 15, 17, 403 P2d 715 (1965). We review the denial of a continuance for abuse of discretion. *State v. Bumgarner*, 219 Or App 617, 637, 184 P3d 1143, *rev den*, 345 Or 175 (2008), *cert den*, 555

US 1101, *adh'd to as modified on recons*, 229 Or App 92, 209 P3d 857 (2009); *State v. Martinez*, 224 Or App 588, 591-92, 198 P3d 957 (2008), *rev den*, 346 Or 364 (2009). If a trial court's decision "is within the range of legally correct choices and produces a permissible, legally correct outcome, then the trial court did not abuse its discretion." *Martinez*, 224 Or App at 592. Additionally, we will not overturn a denial of a defendant's motion for a continuance unless the defendant demonstrates prejudice. *Bumgarner*, 219 Or App at 637.

Whether a denial of a continuance is improper depends on the particular circumstances of the case and the reasons presented to the court at the time the request is denied. *State v. Page*, 18 Or App 109, 118, 523 P2d 1291 (1974). We draw a number of guiding principles from the case law relevant to the facts in this case.

First, a criminal defendant must be given a reasonable opportunity to obtain counsel of his or her choice. *State v. Zaha*, 44 Or App 103, 106, 605 P2d 306 (1980). However, that right to retain counsel must "be balanced against the state's need to conclude the case in a timely manner." *State v. Schmick*, 62 Or App 227, 232, 660 P2d 693, *rev den*, 295 Or 122 (1983). If part of the delay before trial is attributable to the defendant's need to procure counsel, one of the factors that a court considers in assessing the reasonableness of a defendant's motion to postpone trial is whether the delay in obtaining counsel was the fault of the defendant. *Zaha*, 44 Or App at 106-07.

Second, defense counsel must be given a reasonable amount of time to prepare for the defendant's trial. *State ex rel Juv. Dept. v. Garcia*, 180 Or App 279, 286-87, 44 P3d 591 (2002) ("One of the boundaries established by law is that counsel must be given a reasonable amount of time to prepare for a hearing that could result in the deprivation of a liberty interest."). Implicit in a defendant's right to counsel under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution is the right to prepared counsel. *See State v. Smith*, 339 Or 515, 526, 123 P3d 261 (2005) (criminal defendants have a constitutional right to counsel, which is not just a right to a lawyer in name, but also to a lawyer who provides adequate

assistance). Even in cases upholding the trial court's denial of a continuance, we have suggested that it would be an abuse of discretion to deny a continuance when defense counsel has had inadequate time to prepare. For example, in *State v. Keerins*, 145 Or App 491, 932 P2d 65 (1996), the defendant became dissatisfied with his appointed counsel a week and a half before trial. However, he did not inform the court that he wanted to hire a new lawyer until minutes before trial. *Id.* at 493. In upholding the trial court's denial of the defendant's request for a continuance, we stated, "We do not hold that, had defendant retained substitute counsel, a week and a half would have been sufficient time to prepare defendant's case." *Id.* at 495.

Third, generally speaking, a criminal defendant has the right to present a defense at trial. *See State v. Mai*, 294 Or 269, 273-75, 656 P2d 315 (1982). In *Mai*, the Supreme Court noted that the compulsory process clause in Article I, section 11, of the Oregon Constitution protects a defendant's "right to present a defense," including the right to present the defendant's version of the facts to the jury to oppose that of the prosecution, so that the jury may decide where the truth lies. *Id.* at 274 (citing *Washington v. Texas*, 388 US 14, 19, 87 S Ct 1920, 18 L Ed 2d 1019 (1967)).

Applying those principles to the circumstances of this case, we conclude that the court abused its discretion when it denied defendant's motion for postponement. Those circumstances, in which there were delays in procurement of defense counsel and consequent delays in defendant's readiness for trial, neither of which reflected any fault that was attributable to defendant, prevented defendant's attorney from adequately investigating and preparing a significant part of defendant's defense at trial.

First, as to the delays caused by issues with defendant's legal representation, we conclude that those delays were not caused by defendant and, therefore, that he should not be penalized for them. Defendant contended that, initially, he had sufficient funds to hire a private attorney, but, through no fault of his own, someone drained his bank accounts and sold his assets, rendering him unable to retain a private attorney. Once he discovered those facts, he was

appointed a public defender from PDS in late February. PDS, however, months later, discovered that it had a conflict and could not represent defendant. Again, the delay caused by that oversight is not attributable to defendant. Although Deal was appointed in late April, defendant, having been dissatisfied with his past public defenders, was at the same time seeking to raise money for a private attorney. Jagger, the attorney he sought to hire, prematurely notified both Deal and the court that he had been retained by defendant. Deal, thinking that he was no longer representing defendant, stopped working on the case. By the time that Deal had been reappointed, there was but a month until trial. Those delays cannot be said to have been caused by defendant. *See Zaha,* 44 Or App at 105-07 (unexplained delay in the transfer of the defendant's funds that prevented him from hiring attorney at an earlier date was beyond defendant's control). Nor does the record reflect that defendant was abusing the process in any way.

It is apparent from that timeline that, although the court appointed Deal in April, he was not in a reasonable position to begin working on defendant's case until May 11, just 34 days before the scheduled trial date on June 14. As defense counsel timely alerted the court, 34 days in which to prepare for a trial was insufficient in this case.

On June 1, within the time permitted by the court, defendant moved for a postponement of the trial date and informed the court that he lacked enough time to complete his investigation of the case. Defense counsel noted that the case involved numerous felony charges that exposed defendant to a sentence of over a decade in prison and that the case had complicating factors, including (1) a defense theory based on challenges to the credibility of key witnesses that would require defendant to make a showing that York and P had falsely accused him as part of their commission of financial fraud against him; (2) a confession and defendant's recantation of it; and (3) the need to determine whether the state had a full record of text messages between defendant and P so that defendant could respond to his text messages that the state indicated would be offered at trial. Defendant told the court that he needed to investigate those issues and

that he might have to hire experts. The lack of readiness for trial was reasonable in light of the fact that defense counsel had, at that point, had the case for trial preparation for approximately three weeks. The court nevertheless denied the June 1 motion for a continuance.

Although the state opposed the motion to postpone on June 1, when defendant renewed the motion eight days later, the state agreed that defendant needed more time and recommended that the case be postponed one month. By June 9, therefore, it was evident to the parties that defendant was not and would not be ready to put on his defense at trial on June 14. There was no indication that Deal was being dilatory in any way, which is not surprising given that it had been only a month after it appeared that Deal would be trial counsel. And, there was no indication that defendant actually wanted the trial to proceed on June 14, regardless of the representation of his counsel that he was not ready to put on the kind of defense he wanted at trial. We conclude that the court erred by denying the motion for a continuance on June 9 and forcing defendant to go to trial on June 14 because defense counsel had not had a reasonable period of time to prepare his defense for trial.

Citing *State v. Reese*, 25 Or App 231, 234-35, 548 P2d 998 (1976), the state argues that, because defendant was seeking a continuance to procure witnesses, he was required to show that the witnesses could be produced and that, if produced, they would testify to facts material to defendant's case. The state contends that, in this case, defendant gave only vague descriptions of the witnesses he sought and the information about which they would testify and failed to demonstrate that, if the continuance were granted, he could actually produce those witnesses. The state acknowledges that defendant identified some of the potential witnesses but contends that defendant had to show the court that "the witnesses would testify to facts material to the victim's and mother's alleged financial motive to falsely accuse defendant."

We do not read *Reese* as strictly as the state does. In that case, we noted that it "was not a complex case" for newly retained trial counsel, who had earlier interviewed

the defendant and who had the cooperation of the defendant's appointed counsel and should have been aware of "any meritorious avenues of defense." 25 Or App at 233. We observed in *Reese* that, "if defendant had made in a proper manner a specific showing of a plausibility of producing evidence helpful to him, the trial court would have erred in denying his motion for a continuance." *Id.* Nevertheless, because the defendant's motion "was conclusory and not supported by affidavit," we held that the motion was improper and, even assuming that it had been in proper form, there was no abuse of discretion in denying it. *Id.* at 233-34.

In contrast, in this case, Deal emphasized to the court that he needed more time to investigate to determine what witnesses were needed and available for defendant's key defense to P's accusations: establishing that P and York were motivated to lie. In other words, Deal still had not determined how he would be able to best present the defense, much less advise the court of how particular witnesses with whom he had not spoken would testify at trial. Practically speaking, it would be perverse to deny a defendant whose counsel has not had adequate time to even investigate the defendant's primary defense the opportunity to conduct that investigation because the defendant did not know and specify exactly what the defendant needed to procure and what witnesses would say to establish the defense. Again, there was no contention by the state that defendant actually did have adequate time to investigate his defense but delayed doing so to his own detriment.

Furthermore, to the extent that the court denied defendant's motion based on its evaluation of the evidence that defendant was seeking and the defense theory that he was pursuing, that was an impermissible basis on which to deny a motion to postpone. Defendant's theory of the case was that P and York had a motive to lie and that defendant had confessed in an effort to ensure that York would win her custody dispute and that his situation could be sorted out later. In considering defendant's motion at the June 9 hearing, the court seemed to focus on the futility of the information defendant sought to investigate, rather than whether defense counsel had had sufficient time to prepare for trial.

In denying defendant's motion, the court stated that this "is a confession case. I don't know how much good it does for you to impeach the mother of the complaining witness in the case where you've confessed. * * * And the complaining witness who's a minor." Thus, the record indicates that the court, in reaching its conclusion, implicitely made an evaluation about the credibility of P, York, as well as defendant via his confession, and concluded that defendant's theory of the case and any evidence he might put on regarding the credibility of those witnesses would not overcome defendant's confession. Whether the court is persuaded by a defendant's nonfrivolous theory of the case is not a proper basis by which to judge a defendant's motion for a continuance. Accordingly, the court erred when it denied defendant's motion to postpone trial.

We further conclude that defendant was prejudiced by that denial. The state argues that it cannot be said that defendant was prejudiced by the denial of his motion because defense counsel effectively cross-examined York about her use of a forged power of attorney to drain his bank accounts and sell his cars, which was a theory that he also supported with his own evidence. Further, the state argues, defendant failed to show how any of the witnesses purportedly rendered unavailable due to the denial of his motion would have contributed anything to his defense, citing *Bumgarner*, 219 Or App 617. We disagree.

*Bumgarner* is distinguishable from this case. There, the defendant moved for a continuance midtrial so that the gearshift of his truck could be tested for DNA evidence. That case involved charges of child sexual abuse; the victim testified that, when she and the defendant were riding in defendant's truck, defendant ran into a tree and she hurt her vagina when she went forward and hit something. *Bumgarner*, 219 Or App at 637. Her testimony indicated that, when the accident occurred, something went inside of her. Defendant sought a continuance, arguing that he had contacted a DNA expert who said that DNA evidence could be on the gearshift if the victim was testifying that the gearshift went inside of her. The trial court denied the motion, and the defendant appealed. We concluded that the defendant could not demonstrate that the denial of his

motion prejudiced him because all of the physical evidence was inconsistent with the defendant's theory that the victim's injuries were caused by the gearshift. *Id.* at 638.

Here, unlike the defendant in *Bumgarner*, defendant did not seek a motion to postpone to procure evidence in support of a defense theory that was completely contradicted by the evidence presented at trial. Instead, defendant sought a continuance to develop evidence to support his theory that P and York had fabricated the allegations against him for the purpose of perpetrating a financial fraud against him, and, in fact, defendant was able to produce some evidence at trial in support of that defense. Though defendant was able to cross-examine York about her use of the forged power of attorney and was able to call the notary public who allegedly had notarized the power of attorney, we nonetheless cannot say that, had defense counsel had additional time, he could not have produced more evidence to impeach the credibility of P and York.

More akin to this case is the situation in *State v. Hickey*, 79 Or App 200, 717 P2d 1287 (1986). In *Hickey*, on the day set for trial, the defendant's counsel moved for a continuance, explaining that his briefcase, which contained the entire case file, had been stolen the night before. 79 Or App at 202. The file contained witness statements, police reports, and work product generated over the previous months, including notes and research. He explained that, without his materials, he felt that he could not adequately defend the defendant, and that, due to his schedule as a public defender, he had postponed final preparation for the trial until the night before, which ultimately had been thwarted by the theft of his briefcase. The trial court denied the motion, stating that, given the fact that the defendant had been arrested nearly four months earlier, the attorney had had sufficient time to prepare for the trial. The defendant appealed. *Id.* at 203.

We concluded that the trial court had abused its discretion in denying the motion for continuance because the defendant was on trial for a Class B felony, which posed the possibility of substantial prison time; the loss of the file prevented the defendant's attorney from completing his

preparation for trial; and defense counsel lacked the materials that he had developed for trial, which he insisted were necessary to adequately represent his client. *Id.* As for prejudice, we rejected the state's argument that the defendant's failure to point to "instances of inadequate performance" by his attorney precluded us from reversing his conviction. *Id.* at 204 (internal quotation marks omitted). We explained:

> "It is not possible for us to assess the precise impact of the loss of his file on defense counsel's judgment, strategy and competence at trial, and we need not examine his actual performance. We cannot say that the court's refusal to allow the continuance did not deny to defendant his attorney's best efforts on his behalf, which includes adequate preparation for trial."

*Id.* (citation omitted).

Similarly, here, we cannot say that the court's refusal to allow the continuance did not deny defendant his right to present an adequate defense. Had there been more time for Deal to investigate the case, it is possible that defendant could have procured evidence or witnesses that would have impeached the credibility of P or York—an issue that was central to his case and defense. We cannot say that there is little likelihood that defendant was not prejudiced by the denial of his motion to postpone.

Reversed and remanded.