Argued and submitted December 22, 2015, in A156145, reversed and remanded, in A156143, remanded for resentencing, otherwise affirmed March 30, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JESSE LEE KINDLER,
*Defendant-Appellant.*

Lane County Circuit Court
201309731, 201323403;
A156143 (Control), A156145

370 P3d 909

Zachary Lovett Mazer, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jona J. Maukonen, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Armstrong, Presiding Judge, and Egan, Judge, and Haselton, Senior Judge.*

HASELTON, S. J.

---

* Egan, J., *vice* Deits, S. J.

### HASELTON, S. J.

Defendant appeals, challenging his convictions and sentences in two cases consolidated for trial, Lane County Circuit Court Nos. 201323403 (the 403 case) and 201309731 (the 731 case).[1] He raises multiple assignments of error as to each matter. As explained below, we conclude that the trial court erred in denying defendant's repeated motions for a continuance of a suppression hearing and the ensuing trial in the 403 case; consequently, we reverse and remand in that matter.[2] With respect to the 731 case, we reject without written discussion defendant's assignments of error relating to the denial of a motion for continuance and the denial of a motion for judgment of acquittal, but we conclude, as urged by defendant, that the trial court erroneously and prejudicially took judicial notice of a sentencing enhancement fact; accordingly, we affirm defendant's convictions in the 731 case but remand for resentencing.

The material historical facts relating to our review are relatively straightforward. The procedural circumstances, at least with respect to the 403 case, are idiosyncratic and somewhat convoluted.

On February 3, 2013, defendant was the subject of a traffic stop. During the ensuing encounter, defendant purportedly made inculpatory admissions about the presence of marijuana in the car he was driving, and, ultimately, a warrantless search of the car yielded a small amount of marijuana, with related items, and a bag of methamphetamine.[3]

Over seven weeks later, on March 27, 2013, police officers, who had been investigating the theft of a laptop computer, executed a search warrant at defendant's residence. The officers recovered the stolen computer from defendant's

---

[1] The 403 case is A156145, and the 731 case is A156143. For ease and coherence of reference, we refer to each matter by its shortened trial court docket number.

[2] That disposition obviates any consideration of defendant's challenges to the trial court's suppression ruling in the 403 case and to the sentence imposed in that matter.

[3] In addition, police found an Oxycodone pill in defendant's pocket. The parties dispute whether that pill was found pursuant to a search incident to arrest at the scene or later, during booking at the jail.

bedroom and also found two pipes with methamphetamine residue and a digital scale, as well as a rifle missing a bolt action. There is no indication in the record that the search of defendant's residence was in any way related to the February 3 traffic stop and search.

On May 21, 2013, the state initiated the 731 case, which was based exclusively on evidence discovered and recovered during the March 27 search of defendant's home. Specifically, defendant was charged by information with one count of first-degree theft by receiving, ORS 164.055, relating to the stolen computer; one count of felon in possession of a firearm (FIP), ORS 166.270, relating to the rifle; and one count of unlawful possession of methamphetamine, ORS 475.894, relating to the residue found on the pipes.[4] Trial in the 731 case was set for December 11, 2013.

On December 5, 2013, six days before the trial date in the 731 case, the state initiated the 403 case, charging defendant by indictment with one count of unlawful possession of methamphetamine, based exclusively on the methamphetamine found during the February 3, 2003, stop and vehicle search. Concurrently, the state filed a motion to consolidate the 403 case with the 731 case for trial, asserting that consolidation was appropriate because the two matters involved "a same or similar charge," *viz.*, unlawful possession of methamphetamine. On or about December 5, the state, in providing discovery to defendant's counsel in the 731 case, also included discovery pertaining to the 403 case.[5]

On the morning of December 11, the scheduled trial date in the 731 case, defendant was arraigned, and counsel was appointed, in the 403 case. At the same time, the trial court took up the state's motion to consolidate the two matters for trial (that day) and defendant's motion to postpone trial as to both matters—or, at least, to postpone the trial of the 403 case, which would, practically, preclude consolidation.

---

[4] That information was superseded by an indictment, charging the same offenses.

[5] As of that time, counsel had not yet been appointed for defendant in the 403 case. Ultimately, on December 11, the court appointed the same attorney who was representing defendant in the 731 case to represent him in the 403 case.

At the outset, defense counsel moved to postpone both matters on the grounds that the defense was not prepared to proceed to trial and that defendant was undertaking to retain substitute counsel, at least as to the 731 case. Defense counsel represented, in connection with the 403 case, "I can tell the court that the defense is absolutely and unquestionably not ready to proceed to trial on the case ending 23403 at this time."

The state remonstrated that defendant had had ample time and opportunity from the initiation of the 731 case to procure alternative defense counsel if he so chose. The state further asserted with respect to the 403 case that "this is just another simple PCS case," with "one officer witness," "so it's not terribly complicated."

Defense counsel responded:

"Your Honor, a week's not enough time to adequately research potential suppression issues, to prepare a case for trial. It is a separate incident date, despite being an allegedly similar occurrence. There's a reason the court doesn't set trials a week out from arrests, even if the state can provide discovery.

"* * * * *

"* * * It's not reasonable to expect that defense counsel could prepare in a week for a separate incident, and I'm not prepared.

"I'll say right now, with regard to that incident, I am not prepared, I cannot provide constitutionally adequate representation to [defendant], and it would effectively deny him his right to counsel on case 23403 if the court granted the motion to consolidate, and then subsequently denied the motion to postpone."[6]

The trial court then, *sua sponte*, suggested that defense counsel's concerns about inadequate time for trial preparation might be remedied "if we conducted * * * an omnibus hearing [on a] motion to suppress [in the 403 case] this morning, in which you have an opportunity to have the state

---

[6] In response to a question from the court, defense counsel stated that he had first become aware of the 403 case on December 5, and, because of other professional obligations, had not been able to prepare for that matter.

put on its case with respect to those omnibus hearing-type issues." The court continued:

"[i]f it becomes a trickier, stickier wicket as the evidence unfolds, then perhaps you can then reevaluate whether it makes sense for a postponement to be revisited at that time, or you can simply at that point have pre-trial, we can rule and then we can move on."

Defense counsel protested:

"The court's confidence in my ability to recall all of the law which I would need to research and prepare in order to adequately conduct such a suppression hearing * * * is greater than mine. I'll say that freely. I—when I go into a motion to suppress, I need to do research first. I need to familiarize myself—"

The court countered that it was "try[ing] to make the most effective use of everyone's time, including the court's time," and "if it becomes apparent that this simply isn't going to be a relatively straightforward discussion of the case law, but somehow perhaps far more complicated, then I'll revisit and entertain your concerns about that."[7]

Finally, defense counsel proposed a "relatively short postponement" of proceedings in the 403 case, "perhaps a week and a half" would "address this issue." The court denied the motion to postpone.

Having denied the motion to postpone, based on its innovation of an immediate suppression hearing in the 403 case, the court directed that that hearing proceed promptly, after defense counsel had the opportunity to "explore what, if anything, * * * could be raised in [the] omnibus hearing." Although it is unclear from the record how much time elapsed after that statement, it is apparent that the omnibus hearing began later that morning. Defense counsel at the outset renewed his objection to the proceeding based on inability to prepare for the 403 case,[8] and the trial court reiterated

---

[7] Defense counsel posited, in response, that suppression disputes are rarely "fairly simple" and that, for that reason, if he "ha[d] not conducted the proper research," he might not be aware of pertinent authority and, thus, would be unable to bring it to the court's attention.

[8] In orally moving for suppression, defense counsel stated that he was doing so only "pursuant to the court's previous ruling" and that "the defense objects to this process."

that, depending on the content of the proceeding, it had not "irreversibly * * * granted the motion to consolidate."

During the omnibus hearing, both the officer who had stopped defendant and defendant testified. Their differing accounts implicated a variety of matters, including, potentially, whether the stop had been unlawfully extended by unrelated inquiries, whether at least some of defendant's inculpatory statements had been elicited in "compelling circumstances," whether the "automobile exception" applied, and whether "inevitable discovery" may have sufficiently attenuated allegedly unlawful police conduct. Ultimately, the court ruled that the evidence obtained in connection with the February 3 stop and search was admissible and, concurrently and over defendant's continuing objections, reaffirmed its allowance of consolidation and concomitant denial of defendant's motions to postpone proceedings in the 403 case. Thus, the court directed that "with respect to these two cases, we're proceeding to trial now."

Defendant, who was on a release agreement, was absent when the court reconvened a few minutes later, after a break, and defense counsel did not know his client's whereabouts. When defendant could not be located after further efforts, the court revoked the release agreement and issued a warrant for defendant's arrest.

A month later, the consolidated trial of the 731 case and the 403 case occurred. Both cases were tried to a jury, which found defendant guilty of all charges. During the trial, the state presented evidence from a police officer that defendant had "fle[d] the courthouse" during the December 11 proceedings.

The parties then submitted to the jury evidence and argument pertaining to sentence enhancement facts that the state had invoked in both cases. Specifically, as material to our review, the state, in addition to asserting "persistent involvement" with respect to all charges in the 731 case, had also asserted, with respect to all charges in both cases, that "defendant had willfully failed to appear for a mandatory proceeding in connection with this matter."[9]

---

[9] The state gave notice of its intent to invoke that factor immediately after the December 11 proceedings.

At the beginning of that hearing, in opening remarks, the prosecutor noted that the jury had already "heard witness testimony" relating to the willful failure to appear enhancement factor and informed the jury that "I will ask the judge to take judicial notice of that." The state subsequently, in the jury's presence, moved the court "to take judicial notice of the defendant willfully failing to appear for a mandatory proceeding" in connection with all charges. Defendant objected, arguing that "that's a conclusory statement * * * *the willfully portion is beyond the court's purview to take judicial notice of.*" (Emphasis added.) The court, without amplification, overruled the objection, stating, "Notice is taken." The state then presented evidence pertaining to defendant's alleged persistent involvement.

The court instructed the jury, in general terms, as to the burden of proof and that it was to decide the enhancement facts, including the willful failure to appear factor.[10] In closing argument, the state referred to the court's taking of judicial notice: "[T]he judge has already told you—the defendant's FTA, the willful part of that." The jury subsequently found the persistent involvement factor with respect to the first-degree theft and FIP charges in the 731 case and found that defendant had "willfully failed to appear" with respect to all charges in both cases. The court imposed upward departure sentences on all charges, and, in doing so on the first-degree theft and FIP convictions, did not distinguish between the persistent involvement and the willful failure to appear factors; that is, the court did not identify either as being an independently sufficient basis for departure.

On appeal, defendant, as noted, raises myriad challenges. Also as noted, we limit our consideration in the 403 case to the propriety of the trial court's denial of defendant's motions for postponement, because that matter is dispositive. With respect to the 731 case, having rejected defendant's other contentions, we address only whether the trial court erred in taking judicial notice that defendant had "willfully failed to appear."

---

[10] Although the court had instructed the jury during the "guilt phase" on the meanings of "intentionally" and "knowingly," it gave no instruction at any time on the meaning of "willfully."

Mindful of the grinding, "in the trenches" demands of managing trial dockets, we have historically been loath to second-guess trial courts' denials of motions for postponement or continuance. We review such rulings for "abuse of discretion," which compels affirmance so long as the trial court's determination "is within the range of legally correct choices and produces a permissible, legally correct outcome." *State v. Martinez*, 224 Or App 588, 591-92, 198 P3d 957 (2008), *rev den*, 346 Or 364 (2009). Our understanding and application of "the range of legally correct choices" in this context has been broad and pragmatic. *See, e.g., id.* at 592-93.

Nevertheless, there are limits to discretion. The denial of a continuance in the 403 case transcended those limits.

To briefly recapitulate: The indictment in the 403 case was filed six days before the December 11 proceedings, and defendant was arraigned literally minutes before those proceedings began. Although defense counsel—who was appointed as counsel in the 403 case that same morning— had notice of the indictment very shortly after it was filed and had received some discovery relating to that case, he had no meaningful opportunity to prepare for a suppression hearing or trial. Defense counsel repeatedly and vigorously objected to proceeding immediately with the 403 case by way of a consolidated trial. He cogently explained the practical and legal difficulties of litigating suppression matters with no time for preparation, "on the fly": "[W]hen I go into a motion to suppress, I need to do research first. I need to familiarize myself[.]" "It's often in suppression issues * * * where there is some case with a holding that if I have not conducted the proper research[,] I might not be aware of that holding, perhaps rarely applied, rarely seen * * *."[11]

Nevertheless, and over defense counsel's strenuous objections, including that the 403 case was entirely factually unrelated to the 731 case, the court, effectively, compelled

---

[11] Defense counsel also noted that "there are rules regarding how long prior to trial motions to suppress must be filed," and "there's no way I could have complied with those rules." *See generally* UTCR 4.010 (requiring filing of, *inter alia*, pretrial motions to suppress in criminal cases "not less than 21 days before trial or within 7 days after the arraignment, whichever is later, unless a different time is permitted by the court for good cause shown").

counsel to make an oral motion to suppress and to participate, under continuing protest, in the ensuing omnibus hearing. To be sure, the court observed that if, during the omnibus hearing, "it becomes a bog"—that is, if "it becomes apparent that this simply isn't going to be a relatively straightforward discussion of the case law, but perhaps something more complicated"—"then we can revisit the matter." But that ostensible reassurance begged the fundamental question of whether, with an even minimally reasonable time to prepare, to research and investigate, defense counsel may have been able to identify and develop additional contentions. Moreover, even after the omnibus hearing did, in fact, morph into a "bog," potentially implicating multiple, nuanced issues, the court adhered to its original denial of any continuance. In so ruling, including in denying defendant's ultimate request for a brief continuance of "perhaps a week and a half," the court identified no compelling reason to proceed in so summary a manner.

Given the totality of those circumstances, the court's denial of a postponement of proceedings in the 403 case, including the omnibus suppression hearing and the ensuing trial, exceeded the bounds of legally permissible discretion. *See, e.g., State v. Ferraro*, 264 Or App 271, 282, 331 P3d 1086 (2014) (court erred in denying motion to postpone trial where circumstances that were not "attributable to defendant" "prevented defendant's attorney from adequately investigating and preparing" for trial); *State ex rel Juv. Dept. v. Garcia*, 180 Or App 279, 286-87, 44 P3d 591 (2002) ("One of the boundaries established by law is that counsel must be given a reasonable amount of time to prepare for a hearing that could result in the deprivation of a liberty interest.").

The state remonstrates that, even if the trial court erred in denying a continuance, it is incumbent on defendant to establish that he was prejudiced by that ruling—and he has failed to do so. *See, e.g., Ferraro*, 264 Or App at 281. Specifically, as we understand it, the state contends that, to establish the requisite prejudice, defendant must identify additional material evidence or additional arguments that could have been adduced that might have affected the result of the omnibus suppression hearing or trial.

In the totality of these extraordinary circumstances, we decline to require defendant to engage in such a rigorous and particularized "shadow-boxing" exercise. With respect, the state's contention partakes of a classic "Catch-22": It is precisely because of the trial court's precipitous action in *sua sponte* directing a suppression hearing six days after the indictment was filed and on the same morning that defendant was arraigned that we can never know (at least on this record) what additional arguments and proof defense counsel might have developed if the court had allowed a reasonable continuance consonant with defendant's constitutional rights to present a defense. *See Ferraro*, 264 Or App at 281-82.

In that respect, this case is closely analogous to *State v. Hickey*, 79 Or App 200, 717 P2d 1287 (1986), in which we also referenced in *Ferraro*, 264 Or App at 287-88. In *Hickey*, we held that the trial court had erred in denying the defendant's motion for a continuance made on the day of trial after defense counsel's briefcase, which included his entire trial file, had been stolen the night before. 79 Or App at 202. Defense counsel, in moving for the continuance, informed the court that, because of that exigent circumstance, he would be unable to adequately represent the defendant at trial. Nevertheless, the court denied the continuance. *Id.*

We reversed. In so holding, we rejected the state's argument that, because the defendant had failed to identify specific "instances of inadequate performance" by counsel, he had failed to establish prejudice from the denial of a continuance:

> "It is not possible for us to assess the precise impact of the loss of his file on defense counsel's judgment, strategy and competence at trial, and we need not examine his actual performance. We cannot say that the court's refusal to allow the continuance did not deny to defendant his attorney's best efforts on his behalf, which includes adequate preparation for trial."

*Id.* at 204 (internal citation omitted).

The same is true here. Defense counsel explicitly informed the court that, with respect to the 403 case, "I am

not prepared; I cannot provide constitutionally adequate representation to [defendant], and it would effectively deny him his right to counsel[.]" Given that representation in the totality of these circumstances, defendant established prejudice from the denial of a continuance of the 403 case, including both the suppression hearing and the ensuing trial. Accordingly, defendant's conviction for unlawful possession of methamphetamine in the 403 case is reversed and remanded.

We proceed to defendant's contention, in connection with the 731 case, that the court erred in taking judicial notice, in the sentence enhancement proceeding, that defendant had "*willfully* failed to appear" (emphasis added). Defendant asserts—and the state does not dispute—that a criminal defendant's alleged culpable mental state is not a matter properly subject to judicial notice. That is, that it is *not* a matter "not subject to reasonable dispute" that is either "[g]enerally known within the territorial jurisdiction of the trial court" or "[c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." OEC 201(b). We agree.

The state does, however, contend that any error in that regard was harmless, given the uncontroverted evidence of defendant's conduct, *viz.*, the officer's summary testimony that defendant had "[f]led the courthouse" on December 11, 2013, and the court's instructions to the jury. Defendant counters that the court's taking of judicial notice "effectively directed [the] jury verdict."

We agree with defendant that the trial court's error requires a remand for resentencing. In so determining, we particularly note two circumstances: (1) the state's reference in opening statement to its intention of obtaining judicial notice of the willful failure to appear factor and its subsequent, explicit invocation in closing argument of the court's taking of judicial notice, *see* 277 Or App at 249; and (2) the fact that, although the court instructed the jury generally on its fact-finding function and the burden of proof, the court did not instruct the jury, in accordance with OEC 201(g), that it "may, but is not required to, accept as conclusive any fact judicially noticed in favor of the prosecution."

In the absence of such an instruction, the potential that the erroneous judicial notice impermissibly skewed the jury's consideration is manifest.

That error requires remand for resentencing as to all three convictions in the 731 case. As noted, although the jury also found the persistent involvement enhancement factor with respect to first-degree theft and FIP, the court, in sentencing defendant, did not identify persistent involvement as an independently sufficient basis for departure. *See* 277 Or App at 249.

In A156145, reversed and remanded. In A156143, remanded for resentencing; otherwise affirmed.