Submitted March 13, reversed and remanded May 6, 2020

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JOSIE LEE JOHNSON,
aka Josie Johnson,
*Defendant-Appellant.*

### Umatilla County Circuit Court
17CR17405; A167823

466 P3d 710

Defendant appeals from a judgment of conviction for unlawful possession of methamphetamine, ORS 475.894. On appeal, defendant assigns error to the trial court's ruling, which set a trial date for the following morning. Defendant argues that the trial court erred when it set the trial date because defendant was in custody and, as a result, she did not have physical access to her notes and paperwork related to the case. *Held*: Under the particular circumstances of this case, the trial court abused its discretion when setting the trial date instead of granting defendant a continuance to allow her a reasonable amount of time before trial to have someone retrieve her notes and paperwork related to the case for her.

Reversed and remanded.

Jon S. Lieuallen, Judge.

Frances J. Gray filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Patrick M. Ebbett, Assistant Attorney General, filed the brief for re spondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

TOOKEY, J.

Reversed and remanded.

**TOOKEY, J.**

Defendant appeals a judgment of conviction for unlawful possession of methamphetamine, which, at the time defendant was charged, was a Class C felony. ORS 475.894 (2017), *amended by* Or Laws 2017, ch 706, § 15. On appeal, defendant assigns error to the trial court's April 18, 2018, ruling, setting a trial date of April 19, 2018. For the reasons that follow, we conclude that, under the particular circumstances of this case, the trial court abused its discretion when it set the trial date that it did, instead of granting defendant a continuance. We reverse and remand.[1]

The facts relevant to our analysis of defendant's appeal are mostly procedural and undisputed. On March 14, 2017, after making an appearance in an unrelated criminal matter at the Umatilla County Courthouse, defendant was remanded into custody. Deputy Pereyda inventoried defendant's property. Among that property were what Pereyda described as "some kind of clear, hazy rocks in a little baggie," which Pereyda suspected to be methamphetamine. A field test indicated that the substance was methamphetamine.

On March 17, 2017, defendant was arraigned on an information for unlawful possession of methamphetamine. At that arraignment, defendant declined the trial court's offer of court-appointed counsel.[2] On April 12, 2017, defendant was arraigned on an indictment for unlawful possession of methamphetamine.

Over the course of the following year, defendant missed multiple court appearances, and the trial court issued warrants for her arrest. She was also held in contempt multiple times for her conduct in the courtroom.

---

[1] In a second assignment of error, defendant challenges the trial court's denial of her motion to suppress. The trial court denied that motion on procedural grounds, including that it was untimely, and also purported to deny it on the merits, even though there had been no hearing and the court did not explain what it meant. Under the circumstances, we need not reach defendant's second assignment of error; defendant will receive a new trial, presumably with new deadlines.

[2] Defendant explained to the trial court that she did not "wish to waive [her] right to a lawyer," but also did not want the court to appoint one.

On April 11, 2018, defendant failed to appear for a scheduled trial in this case, and the trial court issued another warrant for her arrest. On the morning of April 18, 2018, defendant appeared in court, *pro se*, in two other pending criminal matters.[3]

At her appearance on the morning of April 18, 2018, defendant asserted that she was unaware that a trial had been scheduled for April 11, 2018, and unaware that a warrant had been issued for her arrest. The trial court stated that it was not withdrawing the warrant that it had issued, and defendant was taken into custody.

After a recess, in the afternoon on April 18, 2018, defendant, who was then in custody, made an appearance in this case. The trial court noted that this case had been pending for over a year and stated that it would like to schedule trial for the following morning, the morning of April 19, 2018. After verifying that the state could be prepared to go to trial the next day, the trial court asked defendant, "Is there a reason you can't be ready for trial tomorrow?"

Defendant initially responded that she was prepared to proceed to trial the next day, but, after thinking about it, told the trial court that she was not prepared to proceed to trial because, among other reasons, she did not have her notes and paperwork related to the case with her. She explained that she did not bring them with her because she was not expecting to be taken into custody.

The trial court scheduled the trial for the morning of April 19, 2018, notwithstanding defendant's opposition and her explanation as to why she could not be prepared for trial on that day. Defendant remained in custody in the meantime.

Defendant, who was still in custody, appeared for trial on the morning of April 19, 2018, *pro se*. During the trial, the state introduced evidence from which the jury could find that the substance that had been found on defendant by Pereyda had been sent to a crime lab, that the

---

[3] Defendant had an attorney "legal advisor" appointed by the trial court pursuant to ORS 135.045; the legal advisor moved to withdraw, and the trial court denied the motion.

crime lab had tested it, and that it had tested positive for methamphetamine.

Defendant's theory of defense was that the state had failed to establish a chain of custody proving that the substance that was tested by the crime lab was the same substance that Pereyda had found in defendant's possession because, among other things, there were discrepancies in the dates on certain paperwork that the state relied on at trial. Defendant acknowledged that she had been in possession of a substance of some kind when she was taken into custody on March 14, 2017, but testified that she believed it to be "fake drugs." Defendant also indicated, to both the trial court and the jury, that, because she did not have access to her paperwork related to the case, she was not able to effectively litigate her case.

After the jury was sent out to deliberate, the trial court explained to defendant the reason that it had scheduled her trial for April 19, 2018, notwithstanding her opposition:

> "I'm just—everything that you're stating that the—dates, I mean, most of the stuff you stated, in the Court's opinion, this is a pretty straightforward case, based on the evidence I've heard. You, you know, complain about your dates and your notes.

> "I don't think the dates is really any issue in this case. You may disagree, but for the record, that's the Court's position. Again, this case is one year old. There's been several nonappearances in this case and other cases, and the Court did not find any good cause to continue the matter, and that's why we had a quick trial set."

During deliberations, the jury sent a note to the trial court stating, "Is it okay to ask what the chain of custody is? If yes, what is it? Is there a tracking document?" After consultation with the parties, the trial court responded, "You have received all the evidence you will receive. There is no additional jury instruction on the issue. Please review the previously provided jury instruction, function of the court and jury."

After further deliberation, the jury sent a note to the trial court stating, "The jury is hopelessly deadlocked at

a decision that is 8 to 4, and we are comfortable with that final decision." After consultation with the parties, the jury was instructed to keep deliberating.

Finally, the jury sent a note asking, "Is the only question to come to a conclusion (was she in possession of the evidence given to us)? Is this the only question we need to be concerned with?" In response, the trial court referred the jury to the Uniform Criminal Jury Instruction regarding unlawful possession of methamphetamine.

After additional deliberation, the jury convicted defendant of unlawful possession of methamphetamine.

As noted above, on appeal, defendant assigns error to the trial court's ruling scheduling trial for April 19, 2018. Defendant argues, among other points, that the trial court should have postponed the trial because she did "not have her trial preparation notes and paperwork," and the reason she did not have them was that "she had not expected to be taken into custody." On appeal, defendant likens her opposition in the trial court to the trial court setting a trial date of April 19, 2018, to a motion for a continuance.

The state, for its part, contends that the trial court did not abuse its discretion in setting the trial date that it did because "there had been an ongoing cycle of failures to appear, followed by warrants, followed by arrests, followed by releases from custody, followed by failures to appear" and that, by "setting the trial for the following day with defendant in custody, the court could ensure defendant's appearance for trial before she was released and again failed to appear." It also contends that, "to the extent defendant was unprepared for trial, it was her own fault," insofar as she had "ample time" to prepare. The state also views defendant's opposition in the trial court to the trial court setting a trial date of April 19, 2018, as "essentially a motion to continue the trial."

Given the parties' arguments, and the manner in which the trial court analyzed defendant's opposition to the trial court setting a trial date of April 19, 2018—*i.e.*, considering whether there was "good cause to continue the matter"—we too analyze defendant's opposition to the trial

court setting a trial date of April 19, 2018, as a motion for a continuance. *State v. Stull*, 281 Or App 662, 664 n 1, 386 P3d 122 (2016), *rev den*, 360 Or 752 (2017) ("Defendant, acting *pro se*, did not explicitly ask for a continuance, but at a trial readiness hearing and at trial the court understood defendant to be asking for a continuance * * *.").

　　"A motion for a continuance of a trial date is addressed to the sound discretion of the trial court, and a reviewing court will only reverse such a ruling in the event that the court has exceeded the boundaries that define its discretion." *State v. Gale*, 240 Or App 305, 310, 246 P3d 50 (2010). "Mindful of the grinding, in the trenches demands of managing trial dockets, we have historically been loath to second-guess trial courts' denials of motions for postponement or continuance." *State v. Kindler*, 277 Or App 242, 250, 370 P3d 909 (2016) (internal quotation marks omitted). "Our understanding and application of the range of legally correct choices in this context has been broad and pragmatic." *Id.* (internal quotation marks omitted). "Nevertheless, there are limits to discretion." *Id.* "In reviewing the denial of a motion for continuance, we determine the propriety of the motion by examining the circumstances of the case and the reasons presented to the court at the time that it denied the request." *Stull*, 281 Or App at 667. "Additionally, we will not overturn a denial of a defendant's motion for a continuance unless the defendant demonstrates prejudice." *State v. Ferraro*, 264 Or App 271, 281, 331 P3d 1086 (2014).

　　Here, *State v. Hickey*, 79 Or App 200, 717 P2d 1287 (1986), is instructive. In *Hickey*, on the day set for trial, the defendant's counsel moved for a continuance, explaining that his briefcase, which contained the entire case file, had been stolen the night before. 79 Or App at 202. The file contained witness statements, police reports, and work product generated over the previous months, including notes and research. *Id.* The trial court denied the motion, stating that, given the fact that the defendant had been arrested nearly four months earlier, the attorney had had sufficient time to prepare for the trial. *Id.* at 202-03.

　　We concluded that the trial court had abused its discretion in denying the motion for a continuance because the

defendant was on trial for a Class B felony; the loss of the file prevented defense counsel from completing his preparation for trial; and defense counsel lacked the materials that he had developed for trial, which he insisted were necessary to adequately represent his client. *Id.* at 203. Additionally, we noted that the defendant's unreadiness resulted from factors that were beyond either his or his counsel's control. *Id.* at 204. In sum, we stated, "Although the delay from a continuance might have resulted in some disruption of the judicial process and prejudice to the state, those factors were outweighed by defendant's right to the effective assistance of counsel." *Id.*

As to prejudice, we rejected the state's argument that the defendant's failure to point to "instances of inadequate performance" by his attorney precluded us from reversing his conviction. *Id.* We explained:

> "It is not possible for us to assess the precise impact of the loss of his file on defense counsel's judgment, strategy and competence at trial, and we need not examine his actual performance. We cannot say that the court's refusal to allow the continuance did not deny to defendant his attorney's best efforts on his behalf, which includes adequate preparation for trial."

*Id.* (citation omitted).

Under the circumstances of this case, we conclude that the trial court abused its discretion when, on April 18, 2018, it set a trial date for the morning of April 19, 2018, instead of granting a continuance, after defendant told the trial court that she would be unprepared for trial because she did not have her notes and paperwork related to the case, and that she did not have the notes and paperwork with her because she was not expecting to be taken into custody when she arrived at court. Although the trial court, understandably, wanted to expeditiously proceed with a case that had been pending for over a year, "defendant ha[d] the right to present a defense at trial," including "the right to present the defendant's version of the facts to the jury to oppose that of the prosecution, so that the jury may decide where the truth lies." *Ferraro*, 264 Or App at 282. We do not believe that the trial court could rightly conclude that

the need for judicial efficiency was so great that it required scheduling a trial for the next morning, when defendant lacked her notes and paperwork related to the case, materials that she believed were necessary to present her defense to the jury, particularly where defendant was facing felony charges. *See Decker v. Klapatch*, 275 Or App 992, 998, 365 P3d 1169 (2015) (concluding the trial court abused its discretion in denying the petitioner's motion for a continuance where "a continuance *** would have imposed a minimal burden on the court system while also ensuring that petitioner had a fundamentally fair opportunity to present his case"). Because defendant was in custody when the trial court advised her that trial would be held the next morning, she had no meaningful opportunity to obtain her notes and paperwork related to the case.

As noted above, the state argues that, "to the extent defendant was unprepared for trial, it was her own fault," insofar as she had "ample time" to prepare. We are not persuaded by that argument; it misapprehends the reason why the trial court's denial of a continuance was an abuse of discretion in this case. Like the attorney in *Hickey*, who was forced to go to trial without the materials that he had developed to defend his client after his briefcase was unexpectedly stolen, in this case, defendant was forced to go to trial without her notes and paperwork related to the case after she was (from her perspective) unexpectedly taken into custody. The issue was not that defendant had not prepared—it was that she did not have physical access to her notes and paperwork related to the case. In the circumstances of this case, scheduling a trial for the morning after defendant was taken into custody was an abuse of discretion.

In so concluding, we are cognizant that defendant played a role in the events that culminated in the trial court scheduling trial for the morning of April 19, 2018—defendant had, after all, failed to appear on April 11, 2018—but, she was surprised to be taken into custody, and the trial court should have given her a reasonable amount of time before trial to have someone retrieve her notes and paperwork related to the case for her while she was in custody. Even an additional day might have been sufficient.

With respect to prejudice, in this case, we cannot say that the trial court setting trial for the morning after defendant was taken into custody when defendant did not have her notes and paperwork related to the case did not deny defendant her right to present an adequate defense. *See Ferraro*, 264 Or App at 288 (reversing and remanding where "we cannot say that the court's refusal to allow the continuance did not deny defendant his right to present an adequate defense"). That is because it is not possible for us to assess the precise effect of defendant proceeding to trial in this case without her notes and paperwork related to the case on her "judgment, strategy and competence at trial." *Hickey*, 79 Or App at 204. We observe that, in this case, the jury's notes to the trial court during its deliberation— inquiring about the "chain of custody" and informing the trial court that they were "deadlocked"—suggest that defendant's theory of defense may have had at least some persuasive force.[4] As a result, we cannot say that there is little likelihood that defendant was not prejudiced by the trial court's ruling setting trial for the morning of April 19, 2018, instead of granting defendant at least a short continuance. *Ferraro*, 264 Or App at 288 (reversing and remanding where "[w]e cannot say that there is little likelihood that defendant was not prejudiced by the denial of his motion to postpone").

Reversed and remanded.

---

[4] The trial court's statements, noted above, after the jury was sent out to deliberate, reflect that it also may have justified its decision to deny defendant's request that it "continue the matter" based on its evaluation of the merits of defendant's theory of defense. We observe, however, that whether "the court is persuaded by a defendant's nonfrivolous theory of the case is not a proper basis by which to judge a defendant's motion for a continuance." *Ferraro*, 264 Or App at 286. In that regard, we are not persuaded that defendant's "chain of custody" theory was frivolous. As noted, even after going to trial without her notes and paperwork related to the case, during their deliberations, the jury sent a question to the trial court regarding "chain of custody" and informed the trial court that "[t]he jury is hopelessly deadlocked at a decision that is 8 to 4, and we are comfortable with that final decision." It was only after additional deliberation and a question about whether the jury could convict defendant simply for possessing the evidence, that the jury was able to reach a verdict.