Argued and submitted October 27, 2015, McLoughlin High School, Milton-Freewater; affirmed May 17; petition for review denied October 19, 2017
(362 Or 94)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KEVIN DUANE LITSCHER,
*Defendant-Appellant.*

Harney County Circuit Court
1309347CR; A156081

397 P3d 511

Marc D. Brown, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Peenesh H. Shah, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.

## HADLOCK, C. J.

Defendant was convicted of multiple crimes, including first-degree kidnapping. On appeal from the judgment of conviction, he makes an unpreserved argument that the trial court should have acquitted him of kidnapping because the record does not include evidence showing that he "confine[d]" the victim "in a place where [she was] not likely to be found." ORS 163.225(1)(b). As we explain below, the trial court did not plainly err in entering a judgment of conviction for first-degree kidnapping. Accordingly, defendant's unpreserved argument that he was entitled to a judgment of acquittal presents no basis for reversal. In addition, we decline to exercise our discretion to address defendant's unpreserved sentencing arguments. Accordingly, we affirm.

In assessing defendant's argument that he was entitled to a judgment of acquittal on the kidnapping charge, we view the facts in the light most favorable to the state. *State v. Rader*, 348 Or 81, 83, 228 P3d 552 (2010). We summarize the pertinent facts of this case in accordance with that standard.

Defendant's parents have two homes, their residence in Burns and a cabin in Harney County. The cabin is miles out of town and the closest neighbor is eight to 10 miles away. The area is wooded and the cabin is not visible from the road. Defendant's parents have an antenna that allows them to get cell-phone service at a particular spot inside their cabin; cell service may not be available elsewhere on the property.

In September 2013, defendant and his parents were staying at the cabin. Late one morning, while defendant's father was at work, defendant's mother and defendant both were outside after breakfast. Defendant went into the cabin, then came back outside holding his parents' shotgun at eye level, with his finger on the trigger. Defendant said to his mother, "Which is it going to be? You or me or both of us?" Defendant's mother said that she needed to use the bathroom, but defendant pointed the gun at her face, pushed her into a chair, and said that she "could just sit there and piss [her] pants." Defendant's mother did not say much more after

that; she "didn't want to get [defendant] agitated or upset." Defendant's mother remained seated while defendant sat on the porch and held the gun in his lap, pointed in her direction. Based on how defendant was acting, his mother thought that he was capable of pulling the gun's trigger, and she believed that she "was probably done." While she and defendant sat there, she thought about how she did not want defendant's father "to come up and find a bloody mess in the front yard."

After about 20 minutes, defendant put down the gun and went into the cabin. Defendant's mother took the gun, got into her car, and left. She did not stop to retrieve her purse or her cell phone because those were inside the cabin; she "didn't even consider going in and grabbing them." Defendant's mother drove to a ranch several miles away and, at about noon, called defendant's father and left a message for him. Defendant's father did not immediately retrieve that message, as he was still working—he explained at trial that he and his coworkers "usually shut down [their equipment] at 1:00." Thus, it was not until defendant's father returned to the cabin at about 1:30 that afternoon and got cell-phone reception that he retrieved the message from defendant's mother. By that time, defendant had left the cabin to go to his own job. Defendant's father called the sheriff.

The sheriff and some deputies found defendant at his work site. Defendant threatened to beat the sheriff to death and declared that the only way that he would be taken into custody was if he were dead. However, defendant allowed himself to be taken into custody after a deputy told him to "get on the ground" or the deputy would "release [a police dog] on him."

At trial, defendant's mother testified that she did not believe that she could have left the property any earlier than she did (after defendant put down the shotgun and went back inside the cabin). She did not believe that anybody could have heard her if she had called for help. She also described an encounter that she had had with defendant a few weeks before the incident at the cabin. During that earlier encounter, defendant had looked at an axe, then said to

his mother, "I could kill you and me and set this place on fire."

Based on those events, defendant was charged with five crimes: first-degree kidnapping (with a firearm), felon in possession of a firearm, unlawful use of a weapon, menacing constituting domestic violence, and pointing a firearm at another. The case was tried to a jury. Defendant's mother was the primary witness with respect to the kidnapping charge. Defendant testified on his own behalf, asserting, essentially, that most of the events described above never happened. The prosecutor argued in closing that defendant was guilty of kidnapping because he secretly confined his mother in a place where she was not likely to be found "[b]y not letting her leave and keeping her in that chair." The prosecutor emphasized that the cabin was eight miles from the nearest neighbor, that nobody would have found defendant's mother other than her husband (who was not home), and that nobody could have heard her had she called for help. Defendant took a broader approach in his closing argument. Instead of focusing on the elements of the charged crimes, defendant emphasized discrepancies in his mother's testimony and attempted to persuade the jury that her description of events was not plausible.

The jury found defendant guilty of all counts charged. After a sentencing hearing, the jury also found that the state had proved several enhancement facts. The trial court imposed an upward departure sentence of 144 months' incarceration, plus 36 months' post-prison supervision, on the kidnapping conviction and imposed shorter, concurrent sentences on the four other convictions. Defendant appeals from the resulting judgment.

In his first assignment of error, defendant challenges his conviction for first-degree kidnapping. Although the kidnapping statutes set out several ways in which a person may commit that crime, as charged in this case, defendant could be convicted of first-degree kidnapping only if the state proved that (1) defendant secretly confined his mother in a place where she was not likely to be found, (2) defendant acted with intent to substantially interfere with his mother's personal liberty, and without consent or

legal authority, and (3) defendant had the purpose of terrorizing his mother or another person. ORS 162.225(1)(b); ORS 162.235(1)(d).[1]

Defendant focuses on the first of those elements, arguing that the evidence in this case "was insufficient for a reasonable factfinder to find that defendant held his mother in a place where she was not likely to be found." Defendant points out that he did not conceal his mother by putting her inside a room or by insisting that she not yell for help. Because his mother "was outside in her own front yard," he asserts, she was not "secretly confined" anywhere. Moreover, he argues, the state did not prove that the cabin's yard was a location where his mother was not likely to be found, given that she lived there with her husband. Accordingly, defendant contends, the trial court should have acquitted him of the kidnapping charge. In response, the state emphasizes the remote location of the cabin and that nobody—including defendant's father—was likely to find defendant's mother at the cabin during the 20-minute period when defendant kept the shotgun aimed at her.

As defendant acknowledges, he did not move for a judgment of acquittal on the kidnapping charge and his argument is, therefore, not preserved for appeal. Nonetheless, he asks us to address the unpreserved argument because, in his view, it establishes that the trial court plainly erred by not acquitting him of kidnapping.

In general, when reviewing the denial of a motion for judgment of acquittal, we consider "whether there was

---

[1] ORS 163.235 defines first-degree kidnapping and provides, in part:

"(1) A person commits the crime of kidnapping in the first degree if the person violates ORS 163.225 with any of the following purposes:

"*****

"(d) To terrorize the victim or another person[.]"

ORS 163.225, provides, in part:

"(1) A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, the person:

"*****

"(b) Secretly confines the person in a place where the person is not likely to be found."

sufficient evidence in the record from which a reasonable trier of fact could find the elements of the crime beyond a reasonable doubt," giving the state "the benefit of all reasonable inferences." *Rader*, 348 Or at 91. Because defendant did not preserve his argument, however, he faces an additional hurdle beyond persuading us that the evidentiary record is insufficient to support his kidnapping conviction—he can obtain a reversal of that conviction only if he establishes that the trial court "plainly erred" by entering it. *State v. Kuester*, 275 Or App 414, 417, 364 P3d 685 (2015) ("[A]n unpreserved argument can present a basis for reversal only if it establishes that the trial court committed error that is 'plain[.]'"). An unpreserved argument must meet three criteria to qualify for plain error review. First, the argument must identify an error that is one "of law." *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). Second, the error must be "obvious and not reasonably in dispute." *Id.* Third, the error must be "apparent on the record without requiring the court to choose among competing inferences." *Id.* Even when error is plain, we must determine whether to exercise our discretion to review it. *Id.* at 630.

Considering those standards together, to establish that the trial court plainly erred by not *sua sponte* acquitting him of kidnapping, defendant must demonstrate that it is "obvious and not reasonably in dispute," as well as "apparent on the record," that no reasonable trier of fact could find that defendant had secretly confined his mother in a place where she was not likely to be found. For the following reasons, we conclude that defendant has not established that the trial court plainly erred in the way that he contends.

Several recent opinions of the Oregon appellate courts have considered what it means for a person to be "[s]ecretly confine[d] *** in a place where the person is not likely to be found." ORS 163.225(1)(b). The leading case is *State v. Parkins*, 346 Or 333, 211 P3d 262 (2009), in which the Supreme Court held that the phrase "means that a person is held or restrained in a place where it is not probable that the person will be located, either accidentally or through searching." *Id.* at 342. The court cautioned that application of that definition to the facts of a particular case must "take

into account the circumstances of the place, the victim, and the defendant's actions." *Id.* at 343.

In *Parkins*, the pertinent facts were unusual for a kidnapping case. The defendant, who was acquainted with the family of the 11-year-old victim, was at the family's home. Only the victim and her older sister were at the home with him. The defendant was inside the house, in the victim's mother's bedroom, while the victim and her older sister sat outside on the porch. *Id.* at 335-36. The victim asked her sister where she obtained the cigarette that she was smoking, and her sister said that the defendant had given it to her; she "suggested that the victim go to their mother's bedroom and ask defendant for a cigarette." *Id.* at 336, 343-44. The victim went into the house and found the defendant in her mother's bedroom. The defendant shut and locked the bedroom door and sexually assaulted the victim. *Id.* at 336. When she screamed, the defendant threatened to burn her with a cigarette; he also told her to stop screaming because nobody would hear her and no one would care. *Id.* At some point, the victim's sister rattled the doorknob, the defendant let the victim get up, and the victim unlocked the door and ran out of the room. *Id.*

The defendant was convicted of multiple crimes, including kidnapping on a "secret confinement" theory. *Id.* at 336, 341. On review before the Supreme Court, he argued that the trial court should have granted his motion for judgment of acquittal on that charge. The Supreme Court first held that a trier of fact could find that the defendant had secretly confined the victim by locking her inside a bedroom and threatening her with harm if she continued to scream. *Id.* at 343. But the court agreed with the defendant that no reasonable trier of fact could find that the defendant had confined the victim in a place where she was not likely to be found, given that the victim's sister was present, knew exactly where the victim was and, in fact, found her there. *Id.* at 344. The court stressed, however, that its decision was limited to the facts of the case and that it was not holding "that a room in one's own home can never be a 'place where the person is not likely to be found' when another person is present in the home for purposes of ORS 163.225(1)(b)." *Id.* at 344 n 4. The court also

emphasized that it was not holding "that secret confinement in a 'place * * * not likely to be found' cannot include places where the victim is actually—if accidentally—found." *Id.*

More recently, in *State v. Vaughan-France*, 279 Or App 305, 379 P3d 766, *rev den*, 360 Or 697 (2016), the defendant relied on *Parkins* in arguing that the trial court should have acquitted him of kidnapping. In *Vaughan-France*, the defendant and the victim, then his girlfriend, had been staying at a motel, as three of their acquaintances were aware. *Id.* at 307-08. The defendant became angry when he saw a text message on the victim's cell phone and he assaulted her. The victim attempted to leave, but the defendant threatened her with a knife, dragged her to the shower, and continued assaulting her. The victim's cell phone broke, and the defendant also disconnected the phone in the motel room. At some point, the victim tried to leave the motel room, but the defendant physically prevented her from doing so. He also told the victim to hide in the bathroom when somebody came to the door. The episode lasted about six hours before the defendant left and the victim called for help. *Id.* at 308-09.

The defendant was convicted of multiple crimes, including first-degree kidnapping. *Id.* at 307. On appeal, he argued that the trial court should have granted his motion for judgment of acquittal on the kidnapping charge because he had not confined the victim in a place where she was not likely to be found, emphasizing that some of the victim's acquaintances knew that she was staying at the motel. We rejected that argument after taking into account "the circumstances of the place, the victim, and the defendant's actions," as *Parkins* directs. *Id.* at 313. Looking first to place, we explained that, although some of the victim's acquaintances were aware that the victim and the defendant were staying in the motel, it was "not evident from the record that anyone knew the victim was present in the motel room *during the attack*." *Id.* at 314 (emphasis added). Thus, we considered not only whether other people knew of a link between the victim and the place where she was confined, but whether they were aware of her location specifically during the time of that confinement. Moreover, considering the circumstances of the victim and the defendant, we held that the defendant concealed the victim in the motel room

by hiding her and ensuring that she did not make noise or call for help when others were present. *Id.* Based on those circumstances, we concluded that the record supported a finding that the defendant secretly confined the victim in a place where she was not likely to be found. *Id.* at 315.

In holding that the facts in *Vaughan-France* were sufficient to withstand a motion for judgment of acquittal, we compared them to the facts in *State v. Montgomery*, 50 Or App 381, 624 P2d 151, *rev den*, 290 Or 727 (1981), a pre-*Parkins* case in which we upheld another "secret confinement" kidnapping conviction.

> "In *Montgomery*, the defendant was assaulting the victim in the victim's apartment. During the assault, the defendant's brother closed some of the curtains in the apartment and shut the front door. When police arrived outside to check on the apartment and its resident, the defendant and his brother pulled the victim into his bathroom and held a knife at his throat, threatening to cut his throat if he made a sound. The defendant then shut the door to the bathroom, and the defendant's brother went outside to talk to the police and lied to the police that the victim had left the apartment. The police looked through one unobstructed window, shook and knocked on the front door, and, without hearing any response, left soon after. Based on those facts, we concluded that the defendant had 'secretly confined' the victim in the bathroom by securing the victim behind closed doors and holding him at knifepoint so the victim would not respond to the officer's knocks."

*Vaughan-France*, 279 Or App at 312-13 (internal citations omitted). We concluded in *Montgomery* that the victim was secretly confined in a place where he was not likely to be found because the defendant had taken steps to ensure that police officers would not find him there. 50 Or App at 386-87.

Thus, in both *Vaughan-France* and *Montgomery*, we affirmed the "secret confinement" kidnapping convictions despite the victims having been confined in locations within their own homes.[2] Given those precedents, it is not obvious

---

[2] Although *Montgomery* predates *Parkins*, the Supreme Court did not pass judgment on *Montgomery* in the *Parkins* opinion and *Montgomery* remains good law. *Cf. State v. Kawamoto*, 273 Or App 241, 251, 359 P3d 305 (2015) (citing *Montgomery* with approval).

that defendant was entitled to a judgment of acquittal on the kidnapping charge in this case. First, one can plausibly argue that defendant "secretly confined" his mother where she was sitting outside the cabin by holding her there at gunpoint, preventing her from leaving. True, defendant did not take steps to prevent his mother from calling for help, but he did not have to—she did not have access to a phone and nobody would have heard her had she yelled. It is also true that defendant's mother was outside, not in a closed room. Again, however, it is at least arguable that a factfinder could determine that defendant did not have to move his mother to a closed room to secretly confine her, given the cabin's remote location and the evidence that it was not visible from the road. Under those circumstances, it is not obvious that defendant did not secretly confine his mother when he held her at gunpoint, preventing her from leaving the yard of the family's cabin.

Second, one can also plausibly argue that the cabin's yard was a "place where [defendant's mother was] not likely to be found" during the time that defendant held her captive there—the relevant time for purposes of ORS 163.225(1)(b). *See Vaughan-France,* 279 Or App at 314 (considering whether "anyone knew the victim was present in the motel room during the attack"—not whether other people knew that she had been there at other times). A factfinder could infer that the remote location of the cabin made it unlikely that anybody other than a family member would happen across defendant's mother while defendant was holding her at gunpoint. And a factfinder could also infer that it was not likely that defendant's father would find her there during that time, given his testimony that he usually did not stop working until 1:00 p.m.—roughly an hour after defendant's mother was able to escape from the cabin. At the very least, it is not "obvious and not reasonably in dispute" that a factfinder could not properly draw such an inference. *Vanornum,* 354 Or at 629. Thus, the trial court did not plainly err by entering a conviction on the kidnapping charge.

In his second and third assignments of error, defendant makes unpreserved arguments regarding the length of his sentences for felon in possession of a firearm and unlawful use of a weapon. We do not determine whether defendant's

arguments have merit. Rather, we decline to exercise our discretion to address those unpreserved arguments given that the challenged sentences are concurrent with, and shorter than, defendant's sentence for kidnapping, and defendant has not explained any way in which he is prejudiced by the imposition of those sentences, even if they are longer than the law allows. *See State v. Fults*, 343 Or 515, 523, 173 P3d 822 (2007) (among factors appellate court should consider in determining whether to address an unpreserved claim of error is "the interest of the judicial system in avoiding unnecessary repetitive sentencing proceedings"). *Cf. State v. Powell*, 253 Or App 185, 192, 288 P3d 999 (2012), *rev den*, 353 Or 714 (2013) (error in sentencing on one conviction was harmless because—given another sentence that the defendant would have to serve—correcting the error "would not have the potential to improve defendant's position").

Affirmed.