No. 265 March 26, 2025 285

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CRAIG ANTHONY JACKSON,
*Defendant-Appellant.*

Klamath County Circuit Court
22CR26464, 21CR53068, 22CR22614;
A179559 (Control), A179560, A179561

Alycia E. Kersey, Judge.

Submitted September 27, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Meredith Allen, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Patrick M. Ebbett, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Hellman, Judge, and Mooney, Senior Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

In this consolidated criminal appeal, defendant appeals a judgment of conviction for second-degree assault, ORS 163.175. Defendant raises two assignments of error. For the following reasons, we affirm.

*Motion to continue.* In his first assignment of error, defendant argues that the trial court abused its discretion when it denied his motion to continue made on the day of trial.

"We review the denial of a continuance for abuse of discretion. If a trial court's decision is within the range of legally correct choices and produces a permissible, legally correct outcome, then the trial court did not abuse its discretion." *State v. Ferraro*, 264 Or App 271, 280-81, 331 P3d 1086 (2014) (internal quotation marks and citations omitted). "Whether a denial of a continuance is improper depends on the particular circumstances of the case and the reasons presented to the court at the time the request is denied." *Id.* at 281; *see also State v. Gallegos*, 265 Or App 248, 251, 336 P3d 515 (2014), *rev den*, 356 Or 685 (2015) ("As a general matter, denial of a motion for a continuance on the day of trial is unlikely to be an abuse of discretion *** but that is not a hard-and-fast rule and instead depends on the circumstances.").

The day before trial, the state argued that the victim was "legally unavailable for trial" and that defendant's mother, Gallagher, had had "inappropriate contact" with the victim "on [defendant's] behalf *** to encourage [the victim] to not appear for court, [and] not respond to law enforcement." In support of that argument, the state played a recorded jailhouse call between defendant and Gallagher from July 11, 2022:

"[DEFENDANT]:   So what? Are you saying it doesn't sound good to you or what?

"[GALLAGHER]:   Yeah. Kind of.

"[DEFENDANT]:   Work—kind of work it. Like, kind of (indiscernible).

> "[GALLAGHER]:   She's trying to say that the—that, um—the DA's investigator is in contact with her and she's going to show up to trial and—I don't know.
>
> "[DEFENDANT]:   That's (indiscernible). Why don't you make some calls, and then you'll know.
>
> "[GALLAGHER]:   I'm going to."

In addition, the state presented evidence that the victim ceased communication with the state's investigator on July 11, 2022, and that the investigator and law enforcement repeatedly attempted to contact the victim but were unsuccessful. The court determined that the trial would begin the following day and that it would grant a continuance if the state was unable to serve the victim with a subpoena to appear at trial.

The next day, the state indicated that the victim was in custody. Defendant's counsel requested a continuance, explaining that she needed time to investigate information that Gallagher had relayed to her the night before. According to counsel, the victim had called Gallagher and made statements that were "pertinent" to the victim's "reliability" and "how she obtained her injuries." The trial court denied the motion, reasoning that defendant could call Gallagher as an impeachment witness. After a recess, defendant's investigator testified that he interviewed the victim during the recess and that the victim told him that she had been in a car crash the day before the alleged assault occurred. Moreover, according to the investigator, an individual picked up the victim from defendant's home five days later. Defendant renewed his motion to continue, arguing that "the vehicle and this other individual picking [the victim] up are extremely pertinent." The trial court denied the motion.

After considering the "particular circumstances of the case and the reasons presented to the court," *Ferraro*, 264 Or App at 281, we conclude that the trial court did not abuse its discretion when it denied defendant's motion. Although "we have suggested that it would be an abuse of discretion to deny a continuance when defense counsel has had inadequate time to prepare," *id.* at 282, we are unpersuaded by

defendant's arguments that "[d]efendant could not have done anything to investigate [the victim's] new claims earlier." As the state argues, "evidence supporting the victim's new version of events would have been available to defendant at the time of the crash given that the victim, the witness, and the car returned to his home after the accident."

Further, we reject defendant's argument that the trial court "failed to evaluate whether defense counsel [had] sufficient time to adequately prepare for trial." In denying defendant's motion, the court found that "[b]oth defense and state had an opportunity to interview and listen to [the victim] up and until around July 11th when certain jail calls were made between [defendant] and his mother, Ms. Gallagher. At that time, *all contact with all parties* was cut off by [the victim]." (Emphasis added.) Therefore, we conclude that the trial court did not abuse its discretion. *Cf. id.* (concluding that the trial court abused its discretion when "delays in procurement of defense counsel and consequent delays in defendant's readiness for trial" did not "reflect[] any fault that was attributable to defendant"); *State v. Brockway*, 330 Or App 640, 647, 544 P3d 433 (2024) ("[A]nd most importantly, it was the state, not defendant, that showed up on the morning of trial with new information.").

*Conviction.* In his second assignment of error, defendant argues that the trial court plainly erred by convicting defendant of second-degree assault because the state did not establish the "serious physical injury" element of the crime, ORS 163.175.[1] Although defendant did move for judgment of acquittal, he acknowledges that he "did not argue that the evidence was insufficient to prove that [the victim] suffered serious physical injury as an element of second-degree assault."

"In general, when reviewing the denial of a motion for judgment of acquittal, we consider whether there was sufficient evidence in the record from which a reasonable trier of fact could find the elements of the crime beyond a reasonable doubt, giving the state the benefit of all

---

[1] ORS 163.175(1)(a) provides, in relevant part, that a person commits second-degree assault when the person "[i]ntentionally or knowingly causes serious physical injury to another."

reasonable inferences." *State v. Litscher*, 285 Or App 508, 513-14, 397 P3d 511, *rev den*, 362 Or 94 (2017). However, "[b]ecause defendant did not preserve his argument, * * * he faces an additional hurdle beyond persuading us that the evidentiary record is insufficient to support his * * * conviction—he can obtain a reversal of that conviction only if he establishes that the trial court plainly erred by entering it." *Id.* at 514. "For an error to be plain error, it must be an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences." *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). If we conclude that "a claimed error was [plain] error," we then "determine whether to exercise [our] discretion to review the error." *Id.* at 630. Thus, "[c]onsidering those standards together, to establish that the trial court plainly erred by not *sua sponte* acquitting him of [second-degree assault], defendant must demonstrate that it is obvious and not reasonably in dispute, as well as apparent on the record, that no reasonable trier of fact could find" that he caused the victim serious physical injury under ORS 163.175(1). *Litscher*, 285 Or App at 514 (internal quotation marks omitted).

As relevant to the state's theory of the case, "'[s]erious physical injury' means * * * protracted impairment of health." ORS 161.015(8). We have explained that "protracted" means a duration that is greater than "temporary," or "prolonged." *State v. Stone*, 326 Or App 200, 211, 532 P3d 90 (2023), *adh'd to as modified on recons*, 328 Or App 203, 536 P3d 1094 (2024) (reviewing the denial of the defendant's MJOA and concluding that "the trial evidence was legally insufficient to prove that [the victim] suffered a concussion that caused 'protracted impairment of health'" because the record lacked "evidence as to the frequency or severity of those symptoms").

We conclude that any error is not "plain." Here, the emergency room physician who treated the victim testified that the victim suffered several injuries, including a fractured vertebra in her neck. The doctor explained that a "part of [her] bone had essentially been chipped away from the rest of the bone." The doctor further testified that, as

the bone healed, "it's going to be painful, usually for, you know, several weeks at a time. The normal healing process for a broken bone of almost any type is generally in the 6-8 weeks for full healing." Moreover, the victim testified that as of the trial—which occurred three months after the alleged assault—she was still waiting for a "spinal MRI" because her spine was "not healing the way the doctor would like it to or as fast as he would like it to." Given the evidence in the record, we conclude that defendant has failed to "demonstrate that it is obvious and not reasonably in dispute, as well as apparent on the record, that no reasonable trier of fact could find" that the victim suffered "protracted impairment of health." *See Litscher*, 285 Or App at 514 (reviewing the defendant's plain-error challenge to his kidnapping conviction); *see also State v. Britt*, 335 Or App 91, 101, 557 P3d 524 (2024) (concluding that the trial court did not err in denying the defendant's MJOA because, "[u]nlike the victim in *Stone*, who had only vague concussive symptoms for approximately three months, the evidence here is that K continued to have serious symptoms for over half a year and, specifically, experienced pain that impacted his ability to lay on his side"). Therefore, the trial court did not plainly err when it entered a conviction on the second-degree assault charge.

Affirmed.