Argued and submitted November 10, 2021, affirmed September 28, 2022, petition for review denied February 9, 2023 (370 Or 740)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TERRY DAVID POWELL,
*Defendant-Appellant.*

Marion County Circuit Court
18CR07233; A172668

518 P3d 949

Defendant was convicted of six counts of first-degree sexual abuse (ORS 163.427), all of which involved abusing his stepdaughter over a period of time. He appeals from the judgment of conviction, arguing that the trial court erred by *sua sponte* replacing his appointed counsel, denying his motion to postpone trial, and granting the state's motion to exclude evidence. *Held*: (1) Defendant did not preserve his argument regarding substitution of counsel, (2) the trial court did not abuse its discretion when it denied defendant's last-minute motion to postpone, and, finally, (3) the trial court did not err in granting the state's motion to exclude evidence that the victim had lied on other occasions when confronted by her mother about issues the victim was having at school. The exclusion of that evidence was appropriate because the inference that defendant would ask the factfinder to draw from it—that the victim was lying when she accused defendant of abusing her—required propensity-based reasoning.

Affirmed.

Sean E. Armstrong, Judge.

David L. Sherbo-Huggins, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Mooney, Presiding Judge, and Pagán, Judge, and DeVore, Senior Judge.*

_____

* Pagán, J., *vice* DeHoog, J. pro tempore.

MOONEY, P. J.

Affirmed.

**MOONEY, P. J.**

Defendant was charged with sexually abusing his stepdaughter, A, and later convicted of six counts of first-degree sexual abuse (ORS 163.427). He appeals from the judgment of conviction, asserting that the trial court erred by (1) *sua sponte* replacing his appointed counsel, (2) denying his motion to postpone trial, and (3) granting the state's motion "to exclude evidence that around the time of the accusations, [the victim] had been lying about issues she was having at school and time she was spending with her cousins." For the reasons that follow, we affirm.

TIMELINE & PROCEDURAL BACKGROUND

We begin with a basic timeline of significant procedural events:

- January to October 2018: Defendant is indicted, he retains counsel, pleads not guilty, and the trial date is set for December 19.

- October 17: Defendant's retained counsel withdraws, and the trial court appoints new counsel.

- November 30: Defendant files his first motion to postpone trial.

- December 10: The trial court denies postponement.

- December 14: Defendant files his second motion to postpone trial, and the trial court grants defendant's motion.

- December 19: The trial court issues a scheduling order and sets trial for February 26.

- February 22, 2019: Defendant makes a third motion to postpone trial, and the trial court denies that motion from the bench.

- February 25: Defendant files Reply to State's Motion to Exclude, raising the issue of post-traumatic stress disorder (PTSD) and the need for expert testimony.

- February 26: Defendant's trial begins, the trial court replaces defense counsel, and defendant's trial is reset for September.

- September 2019: Defendant waives his right to a jury, proceeds with a bench trial, and is convicted on all counts.

We describe defendant's three requests for post-ponement of trial in a bit more detail. The first request was made by written motion; it was opposed by the state and denied by the trial court. The second request was made less than a week before the December trial date and only four days after the first motion was denied. The state continued to oppose a trial set-over, but the court granted the renewed motion "based on what the Court heard in chambers." The trial set-over provided the parties an additional ten weeks to prepare, and the court issued a scheduling order to "ensure pre-trial procedural matters are completed timely and both parties have equal time to present evidence." The third request for postponement was made by oral motion on the Friday before the Tuesday trial was to begin. That motion was again opposed by the state and denied by the trial court at that hearing.

On the morning set for trial, the trial court began with pretrial matters and, during that initial proceeding, engaged defense counsel in a colloquy about his noncom-pliance with the court's scheduling order. Defense counsel explained that his failure to comply with the scheduling order was because he did not have enough time to prepare for trial. And that lack of time to prepare, he argued, resulted in his first raising his client's PTSD and competency, and his need to call Dr. Stanulis to address those issues, in a pleading that he filed close to midnight the night before trial. Defense counsel explained:

> "[The expert] specializes in * * * veterans. So when we have a veteran case and issues, we usually go to [that expert]. State didn't get to choose who his expert is. And, you know, if that expert is so slammed and his attorney's so slammed that we can't do things in—as early as we'd like to some-times that happens. But I—I felt—"

The state objected to the proposed expert testimony, con-tending that defense counsel had previously indicated he would not be calling Stanulis as a witness and that he only raised the need to call him as a tactic to delay trial. The

court asked defense counsel if he was "too busy to represent [defendant]," to which counsel replied, "I might be." The court then *sua sponte* indicated that it would replace defense counsel with another lawyer. Defense counsel advised the court that he would "be happy to stay on" as counsel for defendant. But the court deferred ruling on pre-trial motions and set the matter out for trial to allow a new lawyer time to prepare. The court later signed an order, consistent with its oral ruling, removing defense counsel and replacing him with a different lawyer.

## THE COURT'S SUBSTITUTION OF COUNSEL

We begin with the first assignment of error—that the court erred in *sua sponte* replacing defendant's appointed counsel—and we reject it as unpreserved. "The general requirement that an issue, to be raised and considered on appeal, ordinarily must first be presented to the trial court is well-settled in our jurisprudence." *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008). Relying on *State v. Barajas*, 247 Or App 247, 268 P3d 732 (2011), defendant argues that he preserved his argument because it was futile for defense counsel to object to his replacement.

In *Barajas*, we held that the failure to expressly object to the trial court's unilateral denial of the defendant's right to present closing argument did not serve to waive the issue for appellate review. *Id.* at 253. In that case, defense counsel attempted to give a closing argument but was interrupted twice by the court when doing so and prohibited from continuing. *Id.* at 250. As we explained:

"[T]he trial court summarily announced that it was 'going to waive closing argument' and began stating its findings, and it did so only moments after it had denied the prosecution the right to cross-examine a defense witness. Defendant attempted to present argument concerning her view of the facts, and that attempt was cut off. Defendant's argument made it clear that she wanted to be able to present her view of the evidence. To be sure, defendant did not expressly tell the trial court that she wished to present a closing argument and that she had a right to do so. Under the circumstances, though, defendant had no real opportunity to make further objection."

*Id.* at 252. That was so because the trial court simultaneously raised the issue of closing argument and denied any opportunity for closing arguments, without allowing the parties any meaningful opportunity to object. *Id.*

*Barajas* is distinguishable and does not support defendant's preservation argument here. Interrupting defense counsel and denying her the opportunity to make a closing argument after she made clear that she wanted to present her view of the evidence to the court is very different than proceeding to replace defense counsel after counsel advised the court that he would be "happy to stay on" as defendant's lawyer, if he could have more time to prepare for trial. An indication that he would be happy to remain as defense counsel did not provide notice to the state or to the court of the arguments defendant makes for the first time on appeal concerning consultation with the Office of Public Defense Services (OPDS) and any federal or state constitutional right to "continuity of counsel." Without notice, the state did not have the opportunity to present its position on those issues and the record was not developed as it might otherwise have been. The lack of notice is procedurally unfair because the court did not have the benefit of hearing from both sides so that it might correct any error, thereby obviating the need for an appeal on that issue. And "procedural fairness to the parties and to the trial court" is the "touchstone" of preservation. *Peeples*, 345 Or at 220. Defendant did not preserve the first assignment of error.

Defendant argues that, even if not preserved, the court's *sua sponte* decision to replace counsel constitutes plain error because ORS 135.050(6) requires the trial court to consult with the OPDS before doing so.[1] Plain error review requires us to determine, first, whether the error is plain, and second, whether to exercise our discretion to consider the error. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). To be plain, the error must (1) be an error of law, (2) be obvious and not reasonably in dispute, and (3) be "apparent on the record without requiring the court to choose among competing inferences." *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013).

---

[1] ORAP 5.45(1) allows us to "consider a plain error."

ORS 135.050(6) provides:

"Unless otherwise ordered by the court, the appointment of counsel under this section shall continue during all criminal proceedings resulting from the defendant's arrest through acquittal or the imposition of punishment. The court having jurisdiction of the case may not substitute one appointed counsel for another except pursuant to the policies, procedures, standards and guidelines of the Public Defense Services Commission under ORS 151.216."

The relevant OPDS rules are in the *Public Defense Payment Policies and Procedure* (19th rev) (effective Sept 1, 2019). Those rules provide, as relevant:

"§ 1.7.1   Need for consultation with OPDS

"A.  court may substitute one appointed counsel for another only when:

"1.  In the exercise of its discretion, the court determines that appointed counsel who is seeking to withdraw cannot ethically continue to represent the client and except as describes in Section 1.7.2 The court consults with OPDS regarding counsel to whom the case will be assigned [*sic*], or

"2.  In other circumstances, when the interests of justice so require, and after consultation with OPDS regarding the need for substitution of counsel and counsel to whom the case is assigned.

"§ 1.7.2   Reassignment within Public Defender Office, Law Firm or Consortium

"The court does not need to consult with OPDS regarding the substitution of counsel if appointed counsel and counsel to whom the case will be reassigned are part of the same public defender office, law firm or consortium under contract with the PDSC.

"*****

"§ 1.7.4   Consultation Regarding Substitution of Case Types

"Consultation between the court and OPDS may include discussion of the procedure for handling substitution in a category of case types as well as the procedure in an individual case."

(Boldface omitted.) Those rules are notably embodied in a set of policies and procedures concerning payment for legal services provided by court-appointed counsel. Sections 1.7.2 and 1.7.4 highlight defendant's preservation problem because, having not raised the issue in the trial court, the record does not reflect whether the substituted lawyer was in the same office or consortium as the replaced lawyer and, thus, excepted from the consultation requirement, or whether this was the type of case for which a generalized consultation had already occurred and been resolved. Defendant argues that the court's "unilateral decision" to order replacement counsel "strikes at the heart of an independent public defense delivery system" and highlights the problem that OPDS was created to avoid. But the record does not support that argument. It is not obvious that a consultation requirement applied given the limited record. We are also not satisfied that any constitutional right to continuity of counsel is well enough established to be obvious and not open to reasonable dispute. Any error is not plain.

## DENIAL OF DEFENDANT'S SECOND
## MOTION TO POSTPONE

We now turn to the second assignment of error—denying defendant's February 22, 2019, motion to postpone trial—and, for the reasons that follow, we reject it. A motion to postpone trial date is left to the sound discretion of the trial court, and we defer to such a ruling unless the court has gone outside the permissible limits of its discretion. *State v. Wolfer*, 241 Or 15, 17, 403 P2d 715 (1965); *State v. Gale*, 240 Or App 305, 310, 246 P3d 50 (2010). We defer to the trial court's ruling on a motion to postpone because of "the familiarity of the trial court with all of the circumstances surrounding the making of such a motion and the consequences of granting it." *Gale*, 240 Or App at 310. In exercising its discretion, the trial court balances the many demands associated with managing multiple dockets, the defendant's interest in having his lawyer adequately prepared, the victim's interest in timely resolution and avoiding the stress that accompanies trial preparation activities, and the state's interest in expeditiously bringing the case to final resolution. The balancing of those interests is best suited to

the trial court and we, therefore, generally do not "second-guess" a trial court's denial of a motion for postponement or continuance. *State v. Kindler*, 277 Or App 242, 250, 370 P3d 909 (2016). Instead, we review those rulings for abuse of discretion. *Id.* There are limits to discretion, of course. *See, e.g.*, *Kindler*, 277 Or App at 251 (trial court erred in denying postponement in case where the defendant was arraigned just minutes before the omnibus hearing and trial); *State v. Hickey*, 79 Or App 200, 203-04, 717 P2d 1287 (1986) (trial court erred in denying defendant's motion for a continuance made on the day of trial after defense counsel's briefcase, which included his entire trial file, had been stolen the previous night). But this is not a case where the court went beyond the limits of discretion in denying a continuance.

Counsel was appointed to represent defendant in mid-October 2018. The trial was set for mid-December. Although the court denied defendant's first motion to postpone the trial date, it granted the second motion to postpone just four days later and set the trial date out another 10 weeks. The court also issued a scheduling order to facilitate trial readiness through a structured schedule with deadlines. Defense counsel did not comply with that order. Under those circumstances, we cannot say that the trial court exceeded the limits of its discretion when it denied the motion to postpone made in February, just four days before trial was to begin.

## THE MOTION TO EXCLUDE

Moving now to the third assignment of error, we review the trial court's exclusion of evidence for errors of law. *State v. Prange*, 247 Or App 254, 260, 268 P3d 749 (2011).

The case was called for trial in September. Defendant waived his right to a jury, and the court took up the pretrial matters that it had previously deferred. Defendant no longer planned to call Stanulis as an expert witness, and the only remaining substantive pretrial issue was the state's motion to exclude certain testimony from A's mother. That motion was prompted by a statement contained in a report prepared by defendant's investigator, and produced in discovery, that "[r]ecently, [A] has lied to [mother] at least a few

times regarding issues [A] was having at school and time [A] was spending with her cousins." It was because A's original disclosure of abuse was made in a conversation initiated by A's mother to discuss A's difficulties at school that the state filed its precautionary motion.

The state argued that "[i]f the defense intends to ask [A's] mother about [A's] credibility," OEC 608[2] confines defendant to eliciting testimony from mother about A's reputation for untruthfulness, or mother's opinion about A's character for untruthfulness. And, further, that the rule prohibits evidence of specific instances of A's conduct coming in during any testimony that A's mother might provide in the form of reputation or opinion.

Defendant opposed the motion relying on his previously filed memorandum, taking the position that "the evidence was relevant to the victim's self-interest and motive under OEC 609-1[3] and OEC 404(3)."[4] In particular, defendant argued:

> "[A] had a clear self-interest in making the accusations to deflect attention from her mother's repeated questioning about her performance in school. The accusations could also have been made as a result of additional pressure from

_____

[2] OEC 608 provides:

"(1) The credibility of a witness may be attacked or supported by evidence, in the form of opinion or reputation, but:

"(a) The evidence may refer only to character for truthfulness or untruthfulness; and

"(b) Evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

"(2) Specific instances of the conduct of a witness, for the purpose of attacking or supporting the credibility of the witness, other than conviction of crime as provided in ORS 40.355, may not be proved by extrinsic evidence. Further, such specific instances of conduct may not, even if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness."

[3] Defendant did not, and does not, develop an argument under OEC 609-1.

[4] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

her mother concerning recent lies about her school performance and time [she] was spending with her cousins. Both are reasons for [A] to make false, misleading, or exaggerated statements."

Defense counsel supplemented the written reply by explaining that A's earlier accusations showed that she had a plan or motive to be untruthful when confronted about school. When asked by the court to make the connection between A's lies and this case, counsel explained:

"The connection is that when she is confronted with her behavior at school, she lies. When she's confronted about her behavior at school, she tells this story about my client, [defendant]. It's in a—it's in a series of daughter gets confronted, daughter lies. One of those lies, from our position, is the accusations she brought against [defendant]."

The colloquy continued with this discussion:

"THE COURT:  It sounds like you want to offer that to show that she's acting in conformity with her prior way of behaving, which is to lie when she gets in trouble.

"[DEFENSE COUNSEL]:  Specifically around school.

"THE COURT:  Isn't that inadmissible?

"[DEFENSE COUNSEL]:  What's that?

"THE COURT:  Isn't that inadmissible character evidence?

"[DEFENSE COUNSEL]:  No. Believe that it's admissible to show—you know, the list is motive, opportunity, intent, preparation, plan, but those aren't an exclusive list. Those are examples of how a person chooses to act, and here it's part of her—it's like a preparation, it's like a plan. 'If I get confronted about what I'm doing at school, I'm coming up with another story.' Unfortunately, one of those stories, one of those lies dragged [defendant] into it.

"THE COURT:  So the plan is 'When I get in trouble, I'm going to make up false allegation of sex abuse against my stepfather'?

"[DEFENSE COUNSEL]:  Or some other lie.

"THE COURT:  Okay. That's why that's admissible?

"[DEFENSE COUNSEL]:  That's our position, Your Honor."

The state argued, essentially, that defendant's proposed use of A's past instances of being untruthful would invite the factfinder to draw an inference that A lied about defendant abusing her when her mother confronted her about her school issues—an improper inference because it requires propensity reasoning. When the court pressed defense counsel on what authority he had for the disputed testimony to come in, this discussion occurred:

> "THE COURT:   What rule of evidence would have let you allow Mother's testimony about [A lying when confronted about school] into the record?
>
> "[DEFENSE COUNSEL]:   404(3): Evidence of other crimes, wrongs, or acts not permitted to show character, but permitted to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake.
>
> "THE COURT:   Do you have anything in the statement, other than your assertion that there's a link between the allegations she made against [defendant] and her poor performance in school, to suggest that that's why she did that?
>
> "[DEFENSE COUNSEL]:   No.
>
> "THE COURT:   Okay. It's just a theory that maybe when confronted, she's lied in the past about school and her cousins. And on this particular occasion, the lie she chose to tell was to implicate [defendant] in a crime?
>
> "[DEFENSE COUNSEL]:   That—that's correct. We're not calling it a theory, we're calling it a pattern. I mean, she—she keeps doing it.
>
> "THE COURT:   When you use the word 'it,' what you mean is that she keeps lying—
>
> "[DEFENSE COUNSEL]:   Lying.
>
> "THE COURT:   Okay. But what is the character of the other lies that she's told as far as you know?
>
> "[DEFENSE COUNSEL]:   I don't know."

The court granted the motion "based on that offer of proof" and invited counsel to raise the issue again should that become necessary during trial.

Once trial was underway, evidence was received and developed that A was having behavioral problems at

school and that she disclosed defendant's abuse in response to being confronted about those school issues. However, the court's pretrial ruling prevented the introduction of evidence that A had lied on other occasions when confronted about her school issues.

Defendant did not, at any time, seek to offer the disputed testimony under OEC 608. When specifically questioned by the court about his authority for the anticipated testimony, counsel did not propose to offer it in the form of opinion or reputation evidence pertaining to A's character for truthfulness or untruthfulness. Instead, he sought to offer testimony about past instances when A lied to her mother in the context of mother confronting A about school to show that A had a "motive" to lie whenever her mother confronted her about school issues. According to defendant, the purpose of offering evidence of that "pattern" of lying would be to show A's "motive" to lie in that situation and that when A was again confronted by her mother about school, A falsely accused her stepfather of abusing her. Defendant argued that the testimony should be allowed under OEC 404(3) because it was to be offered as nonpropensity evidence of motive. In defendant's view, testimony that A reacted to being confronted about her performance in school by lying about others shows a "motive" to accuse others in order to deflect attention away from her herself when being questioned by her mother.

Having clarified that defendant intended to rely on OEC 404(3) in support of the disputed testimony, the state argued that the testimony would be inadmissible under OEC 404(2), which provides, in part:

"Evidence of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion[.]"

Defendant argues that OEC 404(3) permits the testimony because it would be offered to show motive and not to prove character. He points to *Prange* as support for the admissibility of mother's statements because they are "[e]vidence of an accuser's motivation to make a false allegation," and, as such, are evidence of motive, and therefore not character evidence. We concluded in *Prange* that evidence of "hostilit[ies]"

between the victim and the defendant's stepdaughter were relevant to bias and, therefore, could be admitted to show "the motive for the victim's accusation that defendant shot the victim's house with a pellet gun." *Prange*, 247 Or App at 263.

This case is distinguishable from *Prange*. In *Prange*, the disputed evidence was of a high level of hostility between defendant's stepdaughter and the victim's wife and was offered to show that the victim had a motive to make a false accusation against defendant. *Id*. As we explained:

> "Although some inferences are required to connect that previous dispute to the victim's attitude toward defendant, the inferences are permissible. A jury could reasonably infer that, in light of the familial relationships among the persons involved—that is, between the victim and his wife and between defendant and his stepdaughter—that the victim had reason to be biased against defendant. From that, a jury could infer that the victim's account was less credible than it would have been in the absence of evidence of the earlier dispute."

*Id*. at 262. The facts here are different. Defense counsel did not mention evidence of hostility between A and defendant. Without some tension directly between A and defendant, defendant cannot establish any motive on the part of A to falsely accuse defendant of abusing her. And without a motive, the argument that because A had previously lied when confronted about school, she must have lied this time is inadmissible character evidence because it requires propensity reasoning—that is, she lied before, so she must have lied this time. OEC 404(3) bars the use of propensity evidence. *See State v. Skillicorn*, 367 Or 464, 476, 479 P3d 254 (2021) ("If the proponent's theory of relevance requires the factfinder to employ propensity reasoning, then the trial court cannot admit the evidence***."). The trial court did not err in excluding evidence of A's previous lies.

Affirmed.