640 February 14, 2024 No. 87

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SHAWN MITCHELL BROCKWAY,
*Defendant-Appellant.*

Clackamas County Circuit Court
20CR27780; A176595

Amy B. Lindgren, Judge.

Argued and submitted November 15, 2023.

Daniel C. Silberman, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jon Zunkel-deCoursey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

AOYAGI, P. J.

Reversed and remanded.

Joyce, J., concurring in part, dissenting in part.

**AOYAGI, P. J.**

Defendant appeals a judgment of conviction for harassment, ORS 166.065(3). He raises four assignments of error, arguing that the trial court erred by (1) denying his motion for a continuance; (2) failing to *sua sponte* give a concurrence instruction to the jury; (3) denying his motion for a judgment of acquittal; and (4) ordering him to perform community service as part of his sentence. We conclude that the court properly denied the motion for a judgment of acquittal. However, we agree with defendant that the court abused its discretion when it denied defendant's request for at least a short continuance to investigate information provided by the state on the morning of trial, as relevant to the complaining witness's potential bias. We therefore reverse and remand for a new trial. Given our disposition, we need not address the second and fourth assignments of error.

## FACTS

The harassment charge against defendant arises from an incident that took place on a rural property where defendant resides with his elderly mother and serves as the caretaker. Defendant discovered F sleeping in an outbuilding on the property, called 9-1-1 to report the trespass, and took action to remove F from the outbuilding. There is conflicting evidence as to exactly what defendant did to remove F.

According to the state's version of events, around 5:30 a.m., defendant awoke F by yelling at him and shining a flashlight in his eyes, then sprayed mace or pepper spray at F's face. After stepping outside to call 9-1-1, defendant returned, again told F to leave, began physically removing him, sprayed F again, and, once outside, threw a metal object at F's head. F walked down the hill, where he met the police, who arrested him for trespassing. Defendant was somewhat uncooperative with the police. Defendant denied to the police that he had used pepper spray on F, but admitted pushing F, hitting F with a flashlight, and throwing a container at F.

According to the version of events most favorable to defendant, defendant opened the outbuilding door and yelled at F to get out, called 9-1-1 multiple times, never entered the

outbuilding, never had any physical contact with F, never sprayed anything at F, yelled at F to leave when F exited the outbuilding without his belongings and tried to shake defendant's hand, and threw a plastic milk crate and a flashlight at F.

## MOTION FOR JUDGMENT OF ACQUITTAL

Defendant raised the defense-of-premises defense at trial. That defense provides that "[a] person in lawful possession or control of premises is justified in using physical force upon another person when and to the extent that the person reasonably believes it necessary to prevent or terminate what the person reasonably believes to be the commission or attempted commission of a criminal trespass by the other person in or upon the premises." ORS 161.225(1). Once the defense was raised, the state had the burden of disproving it beyond a reasonable doubt. ORS 161.055(1). Defendant moved for a judgment of acquittal on the defense-of-premises defense, arguing that the evidence was legally insufficient for the state to disprove the defense.

Our task on review of the denial of a motion for judgment of acquittal is to examine the evidence "in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential element of the crime beyond a reasonable doubt." *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995).

Viewing the record in the light most favorable to the state, a rational trier of fact could find that defendant used a greater degree of physical force than was reasonably necessary to remove F from the premises. *See* ORS 161.225(1) (permitting the use of physical force only "to the extent that the person reasonably believes it necessary" to terminate an act of criminal trespassing); *Warren v. Baldwin*, 140 Or App 318, 333, 915 P2d 1016, *rev den*, 324 Or 229 (1996) (recognizing that the defense-of-premises defense requires both a reasonable belief that a person is committing a qualifying crime and a reasonable belief that the degree of force used is "necessary under the circumstances"). That is not the only

finding that a jury could make, but it is one that this record allows, when the record is viewed in the light most favorable to the state. The trial court therefore did not err in denying the motion for a judgment of acquittal.

## MOTION FOR CONTINUANCE

We next consider the denial of defendant's motion for a continuance. We review that ruling for abuse of discretion. *State v. Powell*, 322 Or App 37, 44, 518 P3d 949 (2022), *rev den*, 370 Or 740 (2023). "In reviewing the denial of a motion for continuance, we determine the propriety of the motion by examining the circumstances of the case and the reasons presented to the court at the time that it denied the request." *State v. Stull*, 281 Or App 662, 667, 386 P3d 122 (2016), *rev den*, 360 Or 752 (2017). If the trial court's decision "is within the range of legally correct choices and produces a permissible, legally correct outcome, then the trial court did not abuse its discretion." *State v. Ferraro*, 264 Or App 271, 281, 331 P3d 1086 (2014) (internal quotation marks omitted). "Additionally, we will not overturn a denial of a defendant's motion for a continuance unless the defendant demonstrates prejudice." *Id*.

On the morning of trial, about 15 minutes before the proceedings began, the state disclosed to defense counsel that the district attorney's office had a pre-charge referral for F for fourth-degree assault. That information was potentially relevant to bias, if F had a motive to curry favor with the state by testifying favorably for the prosecution in defendant's trial. *See State v. Nacoste*, 272 Or App 460, 468, 356 P3d 135 (2015) ("One well-recognized category of bias evidence is evidence that a witness has a reason to curry favor with the prosecution, or is under the influence of the prosecution, because of the witness's own criminal conduct or custody status."). F was the alleged victim and thus a key witness for the state. Indeed, the state's only other witness was a police officer who arrived after the incident was over.

Defense counsel requested an OEC 104 hearing to ask F about the potential charge, because he did not want to "look foolish" asking about it at trial if F was just going to deny knowledge of it. *See* OEC 104 (allowing the court to hold

a hearing to determine preliminary questions concerning certain evidentiary matters). At the hearing, F denied any recent arrest for fourth-degree assault, denied any arrest at all in the last 90 days, denied any knowledge of anyone recently making assault allegations against him, denied any awareness of pending charges, and denied any negotiations with the state. After hearing F's testimony, defense counsel requested a continuance. He argued that he was ethically obligated to investigate the new information, even though he was "incredibly hesitant" to request a continuance. He noted that the police report would likely reveal whether F "should know something" about the potential charge. If F was being dishonest, then he could impeach F as relevant to showing bias, or it might reveal that "there's just no basis for him to be potentially biased." The prosecutor had already represented that he had no information about the referral, other than its existence.[1]

The trial court denied the continuance. The court had previously ruled, before the OEC 104 hearing, that it would "allow impeachment examination [of F] on the theory that bias is always relevant." The court denied the continuance request, however, citing the fact that it was only a referral and might not actually be charged, and the fact that F had testified under oath that he did not have any knowledge of it.

The trial court's stated reasons for denying a continuance do not survive scrutiny. For bias purposes, the desire to avoid a criminal charge altogether would seem to be as powerful a potential motivator as the desire to get favorable treatment on an existing charge. *See State v. Valle*, 255 Or App 805, 811, 298 P3d 1237 (2013) ("[I]t is error for a trial court to exclude evidence from which a jury could reasonably infer that a prosecution witness has a motive to curry favor with the state. Such evidence includes evidence that the witness is on probation, has pending charges, or is the subject of a criminal investigation."); *State v. Presley*,

---

[1] We note that defendant does not assert that the state acted in bad faith or committed a discovery violation by providing the information on the morning of trial—only that he should have been given some opportunity to investigate the information. Meanwhile, the state does not contest that defendant was entitled to the information.

84 Or App 1, 5-6, 733 P2d 452 (1987) (holding that it was error not to allow the defendant to cross-examine the state's informant about the informant's pending theft charge that was later dismissed, because the pending charge was relevant bias evidence); *see also Jaynes v. Cain*, 319 Or App 659, 668, 511 P3d 58 (2022) ("A witness can have bias resulting from benefits he may subjectively expect or hope to receive, whether or not those perceived benefits are grounded in reality."). The state has not presented any argument or cited any case law to the contrary.

As for F's denial of knowledge at the OEC 104 hearing, that is precisely why defendant needed to investigate. If F had *admitted* knowledge of the potential charge, then defendant would have had the necessary information to pursue a bias theory. However, because F denied any knowledge, defendant could not pursue a bias theory without first impeaching F's denial of knowledge. Without impeachment evidence on knowledge, defendant could do nothing with the last-minute information, other than "look foolish" by asking F a question that he knew would be met with a denial.[2]

The trial court therefore relied on faulty legal premises when it denied defendant's motion for a continuance for the reasons that it did. *See Anderson v. Sullivan*, 311 Or App 406, 413, 492 P3d 118, *rev den*, 368 Or 702 (2021) ("Relying on a mistaken legal premise when exercising discretion is error, regardless of whether the trial court would have had discretion to reach the same result based on a correct understanding of the law."); *State v. Romero (A138124)*, 236 Or App 640, 643-44, 237 P3d 894 (2010) (when a trial court's exercise of discretion "flows from a mistaken legal premise, its decision does not fall within the range of legally correct choices and does not produce a permissible, legally correct outcome," making it an abuse of discretion).

---

[2] There is possibly a third point on which the trial court relied in denying the continuance. The state asserted as part of its argument against a continuance, "I think that what [defense counsel] elicited would essentially be the extent of information that would be able to be elicited either way when an individual is cross examined regarding possible bias or prejudice." It is unclear whether the trial court adopted that as a third consideration for denying the motion. If it did, that is also legally incorrect, for the reasons discussed later in addressing the state's prejudice argument.

Furthermore, we agree with defendant that, in these circumstances, it was not within the range of legally permissible outcomes for the trial court to deny him any continuance whatsoever. The state has not cited, and we are unaware of, any prior decision holding that it was within a trial court's discretion to deny a criminal defendant *any* opportunity whatsoever to investigate information provided by the state immediately before trial that could plausibly lead to evidence materially beneficial to the defense. To the contrary, in cases where defense counsel has been unprepared to proceed due to circumstances outside counsel's control, we have previously held it to be an abuse of discretion to deny a continuance. *See, e.g.*, *Ferraro*, 264 Or App at 282, 288 (holding that it was error to deny the defendant's request for a continuance to investigate possible impeachment evidence, where the delay was not attributable to him); *State v. Kindler*, 277 Or App 242, 252, 370 P3d 909 (2016) (holding that it was error to deny the defendant's request for a continuance, where his counsel had not been given sufficient time to prepare). Defendant should have been allowed at least enough time to obtain a copy of the police report.

Several considerations are relevant to that conclusion. First, F's credibility was a central issue at trial, because he was the complainant and the only eyewitness other than defendant, and there was minimal other evidence. *See Ferraro*, 264 Or App at 288 (explaining, in connection with reversing a criminal conviction based on erroneous denial of a continuance, that the credibility of the complainant and of her mother was "an issue that was central to [the defendant's] case and defense"). Second, defendant did not have any other bias evidence regarding F. Third, and most importantly, it was the state, not defendant, that showed up on the morning of trial with new information. *Compare State v. Hickey*, 79 Or App 200, 204, 717 P2d 1287 (1986) (en banc) (reversing conviction based on erroneous denial of a continuance, and considering as part of our analysis that "circumstances beyond his and his counsel's control caused defendant's unpreparedness" on the morning of trial), *with State v. Snyder*, 330 Or App 477, 478, ___ P3d ___ (2024) (affirming the denial of a continuance to investigate discovery produced six days before trial, where the defendant "had reason

and an opportunity to do the investigation that he sought to do long before trial" and "the additional material should not have come as a surprise" to him) *and State v. Sassarini*, 300 Or App 106, 118, 452 P3d 457 (2019) (affirming the denial of a continuance where the defendant made a tactical decision to wait to seek certain evidence until the day set for trial). Defendant acted promptly on the new information, requesting an OEC 104 hearing and only moving for a continuance once he knew that F would deny knowledge.

As for prejudice, the state argues on appeal that the denial of a continuance did not prejudice defendant because, even if defendant were to discover evidence that F lied at the OEC 104 hearing, that evidence would be inadmissible under OEC 608. *See* OEC 608(2) (prohibiting the use of extrinsic evidence to prove specific instances of conduct by a witness and thereby attack the witness's credibility, except for certain criminal convictions). But defendant was interested in F's potential bias, and, as to bias evidence, OEC 609-1(2) provides:

> "If a witness fully admits the facts claimed to show the bias or interest of the witness, additional evidence of that bias or interest shall not be admitted. *If the witness denies or does not fully admit the facts claimed to show bias or interest, the party attacking the credibility of the witness may then offer evidence to prove those facts.*"

(Emphasis added.)

The state's argument that defendant has not established prejudice is thus unpersuasive. Because defendant's trial largely came down to a credibility contest between F's version of events and defendant's version of events, we cannot say that denial of the continuance did not prejudice defendant, particularly in a case that was close enough to produce a split verdict. *See Ferraro*, 264 Or App at 288 (stating, as to prejudice, "we cannot say that the court's refusal to allow the continuance did not deny defendant his right to present an adequate defense"); *see also Kindler*, 277 Or App at 252 (the defendant did not have to make a "rigorous and particularized" showing of prejudice, because the denial of the continuance made it impossible to know "what additional arguments and proof defense counsel might have developed

if the court had allowed a reasonable continuance"); *Hickey*, 79 Or App at 204 ("We cannot say that the court's refusal to allow the continuance did not deny to defendant his attorney's best efforts on his behalf, which includes adequate preparation for trial.").

In sum, the trial court abused its discretion in denying defendant's request for a continuance to allow him to investigate the state's morning-of-trial disclosure that the complainant had a pending referral on a potential criminal charge, which might cause the complainant to want to curry favor with the state. The court's reasons for denying the continuance were legally unsound. Moreover, under the circumstances, it was outside the range of legally permissible options for the court to deny defendant *any* opportunity to investigate the late-produced information. If the complainant had admitted knowledge of the potential charge at the OEC 104 hearing, or if the state had provided a copy of the police report when it made the disclosure, there likely would have been no need for a continuance. As it was, however, at least a short continuance was necessary, and it was an abuse of discretion to deny one. We therefore reverse defendant's conviction and remand for a new trial.

Reversed and remanded.

**JOYCE, J.,** concurring in part, dissenting in part.

We have "historically been loath to second-guess trial courts' denials of motions for postponement or continuance," reviewing such denials for abuse of discretion. *State v. Kindler*, 277 Or App 242, 250, 370 P3d 909 (2016). While I appreciate that limits exist on that discretion, I do not believe that the trial court here exceeded those limits. Accordingly, I dissent.[1]

The motion for a continuance here was prompted by the prosecutor's disclosure on the morning of trial about a precharge referral of an assault in the fourth degree against the complainant, F. To be sure, that disclosure was

---

[1] I concur in the majority's opinion that the trial court correctly denied his motion for judgment of acquittal. Because I dissent from the majority's analysis on the motion to continue, I would reach defendant's remaining assignments of error, and I would reject both of those claims of error.

new information, both for the state and defendant. But in my view, the trial court addressed it appropriately. The trial court held an OEC 104 hearing in which F testified under oath that he had no knowledge about the potential charge and had not engaged in any negotiations with the state. In denying the motion for a continuance, the trial court noted those denials and further explained that F had not been charged, and whether the referral would lead to a charge was uncertain and speculative; defendant could question F about the possible charge;[2] and any extrinsic evidence defendant might procure may be inadmissible.[3]

Those factors were appropriate for the trial court to consider, and indeed, the trial court was in the best position to balance them with the interests of the parties and the court. *See State v. Powell*, 322 Or App 37, 44-45, 518 P3d 949 (2022), *rev den*, 370 Or 740 (2023) ("In exercising its discretion, the trial court balances the many demands associated with managing multiple dockets, the defendant's interest in having [their] lawyer adequately prepared, the victim's interest in timely resolution and avoiding the stress that accompanies trial preparation activities, and the state's interest in expeditiously bringing the case to final resolution. The balancing of those interests is best suited to the trial court * * *."). I would thus conclude that the trial court properly exercised its discretion in light of the information that arose the morning of trial.

In my view, the majority places a new limit on that discretion and departs from our existing case law. To support its conclusion that the trial court abused its discretion in denying defendant's motion for a continuance, the majority relies on *Kindler*, *State v. Ferraro*, 264 Or App 271, 331 P3d 1086 (2014), and *State v. Hickey*, 79 Or App 200, 717 P2d 1287 (1986). The circumstances in each of those cases and

---

[2] Defense counsel's ability to question F about the potential charge during trial, even if he knew it would be met with a denial, was not necessarily unavailing. It is possible that the jury may not have found the denial to be credible. We can infer that the jury did not find F to be entirely credible given that they did not convict defendant of the unlawful use of mace charge after F testified that defendant sprayed him with mace.

[3] The majority correctly points out that defendant could have obtained admissible bias evidence under OEC 609-1(2), but the admissibility of the evidence was just one consideration among several that the trial court considered.

the factors that we gave weight to in holding that the trial courts had abused their discretion are distinguishable from this case.

In *Ferraro*, the defendant was indicted on 21 felony sex offenses arising out of numerous events spanning over a year, and he did not obtain counsel until 34 days before the date set for trial. 264 Or App at 273, 275. In *Kindler*, the defendant was indicted on unlawful possession of methamphetamine six days before a suppression hearing and trial and arraigned minutes before the proceedings. 277 Or App at 250. In *Hickey*, the defendant was on trial for a Class B felony, and defense counsel's briefcase containing the entire case file was stolen the night before trial. 79 Or App at 202.

In each of those cases, the defendant moved for a continuance on the day of trial, the trial court denied the motion, and we reversed. In holding that the trial courts had abused their discretion, we reasoned that the defendants had been prevented from adequately preparing a defense, noting the gravity of the felony offenses in *Ferraro* and *Hickey*, and the insufficient amount of time counsel had to prepare for trial in all three cases. *See Ferraro*, 264 Or App at 282 (the delays in procurement of defense counsel "prevented defendant's attorney from adequately investigating and preparing a *significant* part of defendant's defense at trial" (emphasis added)); *Kindler*, 277 Or App at 250 (defense counsel had "no meaningful opportunity to prepare for a suppression hearing or trial"); *Hickey*, 79 Or App at 203 ("The loss of the file prevented [defense] counsel from completing the preparation of the case for trial. It deprived him of his work product developed for use during the trial, and he insisted that he could not adequately defend his client without those materials.").

In contrast, this case was nearly a year old, involved two misdemeanors arising out of one incident, and defense counsel had sufficient time to prepare. Although defense counsel did not have additional time to investigate the pending precharge referral, that denial did not prevent him from preparing a significant part of defendant's defense at trial; having a meaningful opportunity to prepare; or adequately defending his client. F's potential bias was relevant, but it

was not defendant's primary theory of the case and, importantly, the trial court allowed defendant to ask F about that potential bias based on the information that both parties had. In short, the trial court's denial of the motion for a continuance did not preclude defense counsel from adequately preparing a defense, and thus it was not an abuse of discretion.

To be clear, the majority offers a well-reasoned opinion for why granting a motion to continue would have been appropriate. But "we may not substitute our judgment for that of the trial court even if we might have resolved the issue differently." *State v. Licari*, 261 Or App 805, 808, 322 P3d 568, *rev den*, 355 Or 880 (2014). That it would not have been error to grant the motion to continue does not mean that it was error to deny it.

Accordingly, I respectfully dissent.