662                    February 5, 2025                    No. 79

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MUSA ISSA OSMAN,
*Defendant-Appellant.*

Washington County Circuit Court
22CN01843; A180479 (Control), A180963

Andrew Erwin, Judge.

Argued and submitted October 22, 2024.

Daniel C. Silberman, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Kirsten M. Naito, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

JOYCE, J.

Affirmed.

Egan, J., dissenting.

**JOYCE, J.**

In this consolidated appeal, defendant appeals from a judgment finding him in contempt of court for violating a term of a release agreement and from a judgment finding him in violation of the terms of his probation by possessing a firearm. Defendant assigns error to the denial of his motion to continue a bench trial in the contempt proceeding and to the denial of his motion to suppress a gun found in his pocket during a patdown search. We affirm.

*Motion to continue:* The day before his bench trial for violating the terms of a release agreement by coming within 100 yards of an address, defendant moved to continue the trial. He stated that the prosecutor emailed defense counsel the previous day explaining "there is [a] body worn camera being discovered" and that the defense had not received that footage.[1] Defendant renewed his motion the morning of trial. Defendant explained that he had not received the recording, that he was told that morning that the state had sent it to him the previous day, and that it would be sent again "before we leave today." After a brief discussion, the state opted not to introduce the body camera recording at trial. The court understood the state to represent that the recording was not exculpatory and, accepting that representation, acceded to the state's decision not to introduce that evidence as a "self-sanction[.]" The court denied defendant's motion to continue. It then called a 30-minute recess so the parties could prepare and, with the understanding that the court would be notified if significant evidence was discovered on the video, invited defendant to renew the motion if necessary.

Defendant now assigns error to that denial. We review a denial of a motion for a continuance for abuse of discretion, *State v. Thomas*, 266 Or App 642, 643, 338 P3d 762 (2014), and conclude that the court did not abuse its discretion.

On appeal, defendant appears to raise two distinct, yet related, arguments. First, he contends that the trial

---

[1] It is unclear whose body camera the footage was from. The body camera footage of the two officers who interacted with defendant during the incident giving rise to the alleged contempt was admitted at trial. Defendant does not contend that the footage was from either of those two officers.

court erred because it failed to impose *any* remedy for the discovery violation, instead accepting the state's offer to not admit the video. Second, he contends that the correct (and indeed, only) permissible remedy for the discovery violation was a continuance and that the court therefore abused its discretion in failing to grant his request.

We disagree with defendant's view that the trial court failed to impose any remedy for the discovery violation. The court agreed to the state's proposed course of action, which was to exclude the video. Although that is not the only remedy the court could have ordered, it is a remedy. *See* ORS 135.865 (when the court is alerted to a breach of a party's discovery obligations, "the court may * * * refuse to receive in evidence the material not disclosed, or enter such other order as it considers appropriate"). *State v. Pilon*, 321 Or App 460, 477, 516 P3d 1181 (2022), on which defendant relies for the proposition that "imposing no remedy is not within the range of options when a party has been prejudiced by a violation of the discovery statutes," does not foreclose the trial court's course of action here. (Emphasis omitted.)

Defendant's second argument—that the trial court was required to grant a continuance—similarly fails. The record reflects that defendant had information about the body camera footage: He explained that he had read the accompanying police reports and wanted to review the footage "to make sure that there's nothing that might be helpful for me and my defense." Given that information, defendant could have made a record explaining what the video was and why he had reason to believe that it might contain something to support his defense. But he did not, leaving the record devoid of information about the footage or its possible significance, apart from the prosecutor's representations that they would have liked to offer it in their case-in-chief and that it was not exculpatory. *Cf. id.* at 476 (trial court's refusal to allow continuance prejudiced defendant when police reports were discovered on the morning of trial and counsel made detailed assertions about how those reports required additional investigation and impacted the defense's trial strategy); *State v. Ferraro*, 264 Or App

271, 282, 331 P3d 1086 (2014) (trial court's refusal to allow continuance prejudiced defendant when the delays in procurement of counsel and resulting delays in defendant's readiness for trial were not attributable to defendant and prevented defendant from adequately investigating and preparing a defense). We also note that the court anticipated that defendant would receive and watch the video, and it left open the possibility of a further remedy if, after watching the video, defendant brought the matter back to the court.[2] Given those circumstances and the reasons presented to the trial court before its ruling, it did not abuse its discretion in denying the continuance.

*Motion to suppress:* In his second assignment of error, defendant argues that the trial court erred when it denied his motion to suppress evidence discovered during a patdown search because the arresting officer's subjective belief that defendant posed a serious risk of immediate harm was not objectively reasonable. *See State v. Smith*, 277 Or App 298, 303, 373 P3d 1089, *rev den*, 360 Or 401 (2016) (requiring that an officer's safety concerns be objectively reasonable). We review a denial of a motion to suppress for legal error and are bound by the trial court's express and implied factual findings if the record supports them. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993). We affirm.

The relevant facts are few and undisputed. At the suppression hearing, an officer testified that he and his partner were dispatched to an address, after a report that a Black man and a white woman were arguing and that a shot was fired. They were familiar with the location because it had been the subject of numerous complaints in the past and was associated with drug activity, human trafficking, and stolen vehicles. They arrived at the location within ten minutes. It was late at night, and the street was dark. At the scene, officers observed a Black man—defendant—and a white woman walking in front of the reported address. No other people were on the street. Officers told them to stop, and the woman immediately ran into the house. Officers then approached defendant. He had his hands in his pockets

---

[2] The record does not disclose when or whether defense counsel reviewed the video.

and did not comply with their demand to see his hands and to keep them out of his pockets. At that point, the officers decided to pat him down for weapons.

Based on those facts, the court concluded that the officers' safety concerns were objectively reasonable and the patdown was thus permissible. The court noted that the fact that the woman fled into the house supported the inference that this couple was, in fact, associated with the reported address that was previously known to the officers. Moreover, the court credited one officer's testimony that at various points during the encounter defendant's hands were in his pockets despite being ordered to remove them. *See Ehly*, 317 Or at 82 (officer safety justified search of a bag where the defendant failed to respond to officer's question while "rummaging through [a] bag with both his hands concealed"). Given that evidence, the trial court correctly denied defendant's motion to suppress.

Affirmed.

**EGAN, J.,** dissenting.

As the majority opinion states, the record in this case "is unclear" as to "whose body camera the footage was from." *State v. Osman*, 337 Or App 663 n 1,___ P3d ___ (Feb 5, 2025). I agree that the record does not disclose which witness the video related to. I also note that the record does not disclose what was on the recording—other than that it was a body camera video—or its relevance to defendant's trial strategy. At the time of defendant's motion to continue, defendant had not viewed the evidence or even received it. Without knowing the contents of the video, I do not agree that defendant could explain how the video that he had not seen could be helpful to his trial strategy, other than to note that it could provide impeachment or exculpatory evidence, which is what he argued in this case. And defendant argued that he wanted to review the video, before trial, to ensure there was nothing helpful for his defense. Therefore, I would conclude that the trial court abused its discretion when it denied defendant's motion to continue, and the trial court was required to allow defendant time to view the video, before trial, in order to prepare an adequate defense. *See*

*State v. Brockway*, 330 Or App 640, 644-47, 544 P3d 433 (2024) (determining that the trial court abused its discretion in denying the defendant a continuance when the prosecutor informed the defendant, on the morning of trial, that the district attorney's office had a pre-charge referral for the claiming witness, reasoning that the trial court did not have discretion "to deny a criminal defendant *any* opportunity whatsoever to investigate information provided by the state immediately before trial that could plausibly lead to evidence materially beneficial to the defense" (emphasis in original)). Accordingly, I would reverse and remand this case.

I respectfully dissent.